# State of Rhode Island and Providence Plantations

## SUPERIOR COURT

[X] PROVIDENCE/BRISTOL [ ] KENT [ ] WASHINGTON [ ] NEWPORT

CIVIL ACTION, FILE No. PC07-1841

LIONEL P. CARREIRO
**Plaintiff**

THE STOP & SHOP SUPERMARKET COMPANY LLC and UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL 328, by and through their President, DAVID P. FLEMING and their Secretary/Treasurer, JAMES RILEY
**Defendant**

## *Summons*

*To the above-named Defendant:*

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon DENNIS J. TENTE, ESQ. #1949 Plaintiff's attorney, whose address is 311 Doric Ave. Cranston, RI 02910 an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service.

If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

[signature]
CLERK

Dated: April 6, 2007

(Seal of the Superior Court)

TRUE COPY ATTEST

Thomas Noury
Constable #6002
[signature]
4/17/07

S- 135 (REV. 10/00)

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

LIONEL P. CARREIRO

VS.

THE STOP & SHOP SUPERMARKET COMPANY LLC and UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL 328, by and through their President, DAVID P. FLEMING and their Secretary/Treasurer, JAMES RILEY

C.A. NO. PC07-1841

COMPLAINT

1. Plaintiff is an individual residing in the Town of North Smithfield, in the State of Rhode Island.

2. Defendant, THE STOP & SHOP SUPERMARKET COMPANY LLC, referred to as Defendant Employer, is a corporation organized and existing under the laws of the State of Rhode Island, and at all times pertinent hereto doing business on Mendon Road, in the Town of Cumberland and State of Rhode Island.

3. Defendant, UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL 328, by and through their President, DAVID P. FLEMING, and their Secretary/Treasurer, JAMES RILEY, referred to as Defendant Union, is an unincorporated association, existing under the laws of the State of Rhode Island with its principal office located at 278 Silver Spring Street, in the City of Providence, State of Rhode Island and, at all times mentioned, was the Collective Bargaining Agent for employees, including Plaintiff, in the meat, fish, delicatessen, bazaar, cold food, bake off contiguous to the Meat Department and Poultry Department, except supervisory employees, of the above-mentioned employer.

4. Plaintiff was employed by Defendant Employer on or about June 2, 1987 in the Meat Department, and was continuously in Defendant's employ in said department

Law Offices
.ETTI & TENTE
.1 Doric Avenue
.inston, RI 02910
401) 941-4050
x (401) 941-2130

until October 1, 2006, when Plaintiff was unlawfully discharged by such Defendant.

5. On or about February 15, 2004, Defendant Employer and Defendant Union entered into a Collective Bargaining Agreement covering employees, including Plaintiff, which agreement was in force during the entire period involved. A copy of the pertinent portions of said agreement, marked Exhibit 1 is attached and made a part of this Complaint. Such agreement was entered into by Defendant Employer and Defendant Union for the benefit of employees in the bargaining unit; and Plaintiff, as a member of such bargaining unit, is accordingly entitled to the benefit of the agreement and to enforce its provisions.

6. As appears from the agreement, Article 25, Paragraph H. provides that an employee covered by the agreement shall not be discharged except for just cause and Article 29 of the agreement establishes a grievance procedure, culminating in binding arbitration, for the presentation, negotiation and settlement or other final disposition of grievances. It also provides that after a demand for arbitration but prior to commencing arbitration, the parties may engage in voluntary and non-binding grievance mediation under the auspices of F.M.C.S.

7. Although there was no notice of discharge, Plaintiff was allegedly discharged for purchasing a package of hot dogs which were a number of hours beyond the product's printed expiration date. He was questioned by security personnel on or about September 13, 2006 for said purchase, was suspended and told to contact a Union Representative. The Plaintiff was discharged on or about October 1, 2006, and the first step of the grievance procedure took place almost immediately with the Store Manager indicating to the Plaintiff that he was discharged for violating purchase policies and the termination was out of the Store Manager's hands.

8. Subsequent thereto, the second step of the grievance procedure took place on October 6, 2006 at 11:00 a.m. with no settlement, and the third step took place on

Law Offices
...ETTI & TENTE
...1 Doric Avenue
...nston, RI 02910
(401) 941-4050
...x (401) 941-2130

October 16, 2006 at 1:00 p.m. and again was not settled. Representatives of the Defendant Employer indicated that they would not bend discharge rules with regard to purchase policy violations.

9. It is the Plaintiff's information and belief that the third step of the grievance procedure was the last discussion between the Defendant Employer and the Defendant Union with regard to the Plaintiff's discharge. Although Section 2 of Article 29 mandates that the grievance shall be referred to the American Arbitration Association within seven (7) days after said last discussion, Plaintiff was never informed with regard to any referral to arbitration by the Defendant Union. On or about October 23, 2006, Plaintiff forwarded a letter to the Defendant Union's President demanding arbitration, said letter attached hereto and identified as Exhibit 2 to the Complaint.

10. Plaintiff alleges that the Defendant Union, in breach of its statutory duty of fair representation owed to Plaintiff under the provisions of the Labor Management Relations Act of 1947, as amended, conspired with Defendant Employer to permit Plaintiff's discharge to stand, although there was no just cause for the discharge; that the negotiations between Defendant Employer and Defendant Union with respect to Plaintiff's grievance were spurious, carried on in bad faith and deliberately designed to give Plaintiff the false impression that a sincere effort was being made by Defendant Union to resolve the grievance when in reality, Defendant Union had decided to acquiesce to the Plaintiff's discharge. Defendant Employer and Defendant Union knew, or should have known, that employee purchase policies had been violated for years and Defendant Employer was really discharging the Plaintiff as a result of seniority, pay grade and company benefits which were being negotiated between the Defendant Employer and the Defendant Union at the time of the Plaintiff's discharge.

11. As a result of the Plaintiff's request for arbitration, Defendant Union, through its President, notified the Plaintiff to appear before the Defendant Union's Board on

Law Offices
..ETTI & TENTE
..1 Doric Avenue
..anston, RI 02910
(401) 941-4050
..x (401) 941-2130

November 6, 2006 to appeal the alleged decision not to arbitrate the Plaintiff's termination. Said notice is attached hereto and identified as Exhibit 3 to this Complaint. As a result of the meeting on November 6, 2006, Defendant Union, through its President, notified the Plaintiff on November 16, 2006 that the Board unanimously voted to deny any further action with regard to the Plaintiff's grievance. Said notice is attached hereto and identified as Exhibit 4 to this Complaint. Defendant Union, through its President, when it met with the Plaintiff on November 6, 2006 and gave its decision on November 16, 2006, knew that it could no longer arbitrate the Plaintiff's discharge due to the fact that more than seven (7) days had elapsed since the third step of the grievance procedure. In spite of knowing that it could no longer arbitrate, Defendant Union wrongfully, willfully and maliciously allowed the Plaintiff to present his reasons for arbitration when the Defendant Employer knew that they would be futile.

12. As a result of Plaintiff's discharge by Defendant Employer, in violation of Plaintiff's rights under the Collective Bargaining Agreement, and in breach by Defendant Union of its duty of fair representation owing to the Plaintiff and, further, based upon Defendant Union's willful and malicious conduct in having the Plaintiff present his reasons for arbitration when the time limit had clearly expired, Plaintiff has suffered grievous and extensive damages.

13. The monetary amount claimed against the Defendants, and each of them, in this action is sufficient to establish the jurisdiction of the Superior Court.

14. Plaintiff further desires to be reinstated to Plaintiff's former job at Defendant Employer, and alleges that he is entitled to such reinstatement retroactive from the date of discharge, without any break in seniority.

**WHEREFORE,** Plaintiff requests:

1. That the Court determine that Defendant Employer discharged Plaintiff without just cause, in breach and in violation of Plaintiff's rights under the Collective Bargaining

Law Offices
..ETTI & TENTE
..1 Park Avenue
..nston, RI 02910
(401) 941-4050
..x (401) 941-2130

Agreement, and that Defendant Union breached its duty of fair representation owing to the Plaintiff in the processing of the grievance filed on Plaintiff's discharge.

2. That this Honorable Court award the Plaintiff compensatory damages, punitive damages, interest and costs against the Defendant Employer, the Defendant Union, and each of them, as the Court deems just and proper.

3. That this Honorable Court order Defendant Employer to reinstate Plaintiff in the job previously held, retroactive to the date of Plaintiff's discharge and without any breach in Plaintiff's seniority.

4. That this Honorable Court award the Plaintiff any and all further relief that it deems just in the circumstances of the within matter.

LIONEL P. CARREIRO
By his Attorney,

Dennis J. Tente

DENNIS J. TENTE, ESQ. #1949
**COLETTI & TENTE**
311 Doric Ave.
Cranston, RI 02910
941-4050

**PLAINTIFF DEMANDS TRIAL BY JURY.**

April 6, 2007

Law Offices
.ETTI & TENTE
.1 Doric Avenue
.nston, RI 02910
(401) 941-4050
x (401) 941-2130

# AGREEMENT WITH

# THE STOP & SHOP SUPERMARKET COMPANY LLC

AND

# LOCAL UNION 328 (MEAT)

CHARTERED BY THE

# UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION

AFL-CIO-CLC

Effective Date: February 15, 2004
Expiration Date: February 17, 2007

EXHIBIT 1

Dear Member,

This is YOUR UNION'S CONTRACT with your Employer. [illegible] forth your WAGES, HOURS, AND OTHER UNION BENEFITS.

These benefits have been achieved after many months of negotiations. They represent the gains made in prior years due to the cooperation and struggles of members before you, as well as those of present members. These gains have been hard won.

**PROTECT THEM - GUARD THEM ZEALOUSLY, READ YOUR CONTRACT - KNOW YOUR RIGHTS - KNOW YOUR BENEFITS.**

These benefits are yours. When members violate the contract, they hurt not only themselves, but the rest of the members as well.

Save this contract so that you may refer to it whenever the need arises. When you have a question and/or a problem occurs, call or write this office. Give all the relevant facts about your situation so that it may be referred to the proper union representative for FAST AND EFFICIENT handling.

This Union is as close as your phone. Do not be in doubt as to what your rights or benefits are. CALL US AND BE SURE.

Fraternally,

Dave

Dave Fleming
President

UNITED FOOD & COMMERCIAL WORKERS UNION
LOCAL 328

N.B. There is a Local 328 Union Shop Steward in your place of employment. Also, Local 328 Union Representatives visit your place of employment regularly. Please get to know them.

Local Union and a supervisor. In the event a shortage is found to exist, the Company will take into consideration the employee's past work record before taking any disciplinary action.

SECTION 2 : In the event of an alleged shortage, the Union may examine copies of store transactions for the purpose of checking figures.

ARTICLE 21
PRIVILEGES

Employee's privileges heretofore existing shall continue under this Agreement. The Union agrees that there shall be no abuse of such privileges.

ARTICLE 22
NO INDIVIDUAL AGREEMENTS

The Company shall not enter into any individual agreement with any employee or employees covered by this Agreement and which is in conflict with this Agreement.

ARTICLE 23
NO REDUCTION IN WAGES

There shall be no reduction in wages as a result of the adoption of this Agreement.

ARTICLE 24
POLYGRAPH

The Company agrees that it will not request or require or accept any voluntary offer from any employee to take a lie-detector test.

ARTICLE 25
SENIORITY

SECTION 1 - LAYOFFS

A. The principle of seniority shall apply in all layoffs due to lack of work covering all employees in a mutually agreed upon geographical area in accordance with the following provisions.





B. In the process of a layoff within the job classification of Meat Department Heads due to closed out stores, Meat Department Heads shall not exercise their seniority over one another. However, a Meat Department Head of a closed out store shall have the right to exercise his seniority through any lower job classification in accordance with, and in order, of the classifications listed in (D) of this section. A Meat Department Head of a closed out store, when reduced to a lower job classification, shall carry in the lower job classification his total of all Full-time service with the Company.

C. In the application of seniority in layoffs, displacements or recall, the date determining an employee's seniority date shall be equal to the date the employee was either employed for or appointed to Full-time work within the respective bargaining unit covered by this Agreement. Once the original seniority date is established, any such time as the employee has been actively employed Full-time in the meat department shall be used to determine his total seniority.

D. In the process of a layoff (except B of this Section) the junior employee in any job classification shall have the right to exercise his seniority through any lower job classifications starting first with the next lower job classification in accordance with and in order of the classifications listed below:

| Group 1 | Group 2 |
|---|---|
| Meat Department Head | Deli Head |
| Head Meat Cutter | Lead Cold Food |
| Assistant Head Meat Cutter | Lead Service Fish |
| Meat Cutter | |
| Apprentice Meat Cutter | |

Employees from either of the above groups may bump down into the following groups, except that a Full-time Lead Cold Food Clerk and Full-time Lead Fish Clerk may not bump a Full-time Clerk.

Group 3
Full-time Clerk
Full-time Service Clerk
Part-time Meat Cutter
Part-time Journeyman Caseman and Part-time Clerk
Part-time Service Clerk

NOTE: Bumps are allowed between Group 1 and 2, except that Meat Cutters hired after 3/10/85 may not bump a Deli Head and only a Deli Head may bump a Lead Cold Food or Lead Service Fish Clerk.

E. The junior employee in any job classification when reduced to a lower job classification shall carry in the lower job classification his total of all Full-time service with the Company.

F. Full-time employees shall have seniority rights over Part-time employees.

G. Full-time employees will be given one week's notice or one week's pay in lieu of notice in layoffs due to lack of work.

Part-time employees shall be notified of layoff by 3:00 P.M. on Friday, except in the event of a store closing where they shall receive one week's notice.

H. An employee shall be terminated in the event of any of the following:

1. The employee quits;

2. The employee is discharged for just cause;

3. The employee, while on leave of absence, accepts work with another employer (except for employment with the Union), unless he has written permission from the Company. The Company will furnish the Union with a copy of such permission when granted;

4. The employee fails to report from a layoff within ten (10) working days, (Part-time within seventy-two (72) hours), from the date the notice of recall was sent by the Company, by certified mail, return receipt requested to the employee;

5. A Full-time employee has not worked for the Company for twelve (12) consecutive months from date of layoff.

I. Employees employed thirty (30) days or less shall have no seniority rights.



SECTION 2 - RECALL

A. Full-time Employees:

1. The Full-time employee who accepts temporary Part-time work shall be given first preference for Full-time work within his classification when it becomes available;

2. Full-time employees laid off for lack of work shall have the right to job openings which may occur within a period not to exceed twelve (12) months after their date of layoff. Such preference of employment shall be offered to the employees within an area which reasonably conforms to their former place of employment. If the employees are re-employed within the above period after the date of layoff, they shall be reinstated and shall not lose their continuity of employment;

3. A Full-time employee who has been reduced to Part-time shall be scheduled for the maximum available Part-time hours in the department.

B. Part-time Employees - Part-time employees employed for thirty-one (31) days or more shall have seniority rights within the store and six (6) months' recall rights within the store. In the case of a store closing, seniority rights and recall rights shall be within the Market Manager area or the Local 328/1445 zone area.

SECTION 3 - PROMOTIONS

A. The Company shall continue its efforts to train senior employees to fill higher rated classifications.

B. Promotions to Head Meat Cutter shall be made from Assistant Head Meat Cutters or Full-time Meat Cutters.

C. In the matter of promotion, the Company shall have the right to exercise its judgment on fitness and ability and shall make final determination after giving due regard to seniority and after considering suggestions and recommendations of the Union.

SECTION 4 - One (1) Steward per store shall not be transferred unless such transfer is mutually agreed upon between the Company and the Union.

SECTION 5 - The Union shall supply the Company with a list of Stewards designating which Steward has top seniority and store locations.

SECTION 6 - The Steward shall have the authority to handle any violations of the provisions of this Agreement upon occurrence of such violations. The method of handling the violations of this Agreement is outlined in the Grievance Procedure.

SECTION 7 - The Steward shall not in any way interfere with the Manager in his operation of the store.

SECTION 8 - The Union shall furnish yearly an up-to-date list of all stewards and their store locations.

SECTION 9 - The Company agrees to provide one (1) day (a Monday, Tuesday or Wednesday only) with pay to allow two (2) Stewards per store to attend the annual Shop Steward Conference. Store Managers must be notified in advance so that appropriate scheduling arrangements can be made.

## ARTICLE 29
## GRIEVANCES AND ARBITRATIONS

SECTION 1 - GRIEVANCE PROCEDURE
In the event that a problem should arise, the employee may take up this problem with his Store Manager, Department Manager, Union Representative or Steward for adjustment.

If the employee feels that this problem has not been solved to his satisfaction and he desires to make this a grievance, the grievance shall be dealt with in the following manner:

First Step - The employee may report his grievance to the Steward or Union Representative who will meet with the Meat Department Head or Store Manager to adjust the grievance. In the event of the Steward handling the grievance, the final settlement of the grievance shall be first approved by the Union Representative.





Second Step - If the grievance is not settled, the Union Representative shall meet with the Company's Market Supervision and attempt to settle the grievance.

Third Step - If the grievance is not settled, the grievance shall be referred to the Company's Labor Relations Division. The Labor Relations Division shall discuss the grievance with the Union Representative and Steward and endeavor to settle the grievance; in the event the grievance is not settled in the third step, it shall be submitted to arbitration in accordance with Section 2.

SECTION 2 - ARBITRATION PROCEDURE
In the event that the Company and the Union are unable to settle a grievance, then seven (7) days after last discussion between the Company and the representative of the Union the grievance shall be referred to the American Arbitration Association whose decision shall be final and binding on both parties. The Arbitrator shall have no authority or power to add to, detract from, or alter in any way the provisions of this Agreement.

In the event of any grievance over a discharge or suspension pending discharge, the Union shall notify the Company of such grievance within fourteen (14) days of the date of discharge or suspension pending discharge or its right to arbitration shall be forfeited. The expense of such arbitration shall be borne equally by the Union and the Company.

After the Union has filed a demand for arbitration but prior to commencing arbitration, the parties may engage in voluntary and nonbinding grievance mediation under the auspices of the FMCS.

## ARTICLE 30
## TRANSFERS AND TRANSPORTATION

SECTION 1

A. The Company shall not make unreasonable transfers. No transfers of employees shall be made by the Company unless the Union and the employee have been notified prior to the transfer, in writing or in person. If notification has been made in person, the transfer shall be confirmed in writing.

LIONEL P. CARREIRO

October 23, 2006

David Fleming
278 Silver Spring Street
Providence, RI 02904

Dear Mr. Fleming,

I am writing to you in regards to inform you I have decided to proceed with the arbitration procedure as stated in " Section 2 page 31" in the Agreement Book with Stop and Shop.

I have been employed by the Stop and Shop Company for 19 years and have been a 328 member throughout that time. If the union is not able to afford me with representation I am prepared to provide myself with the proper representation.

Article 29 Section 2 states the arbitration procedure that in the event the company and the union are unable to come to settle a grievance, the representative of the union the grievance shall be referred to the American Arbitration Association. After the union has filed such a demand for arbitration but prior commencing arbitration, the parties may engage in voluntary and nonbinding grievance mediation under the auspices of the FMCS.

I'm looking forward to working with 328 for a more suitable result.

Regards,

Lionel P. Carreiro

**EXHIBIT 2**

UFCW
a VOICE for working America

October 26, 2006

Mr. Lionel P. Carreiro
30 Saykles Hill Road
N. Smithfield, RI 02896

Dear Lionel,

We are in receipt of your letter requesting to appear before the UFCW Local 328 Executive Board to appeal the decision to arbitrate your termination.

In complying with your request, you are scheduled to appear before the Board on Monday, November 6, 2006 at 7:15 PM. The meeting will be held at the Union office located at 278 Silver Spring Street, Providence, RI.

Please contact my secretary, Gina at 1-800-624-7776 ext. 22 to confirm your attendance.

Sincerely,

UFCW Local 328

David P. Fleming

Mr. David P. Fleming
President

DPF/gmo

Enclosures

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

**EXHIBIT 3**

DAVID P. FLEMING
*President*

United Food & Commercial Workers Union, Local No. 328
278 Silver Spring Street
Providence, Rhode Island 02904-2593
www.ufcw328.org
401-861-0300
1-800-624-7776 (Toll-Free)
401-331-7965 (Fax No.)

UFCW
a VOICE for working America

November 16, 2006

Mr. Lionel P. Carreiro
30 Sayles Hill Road
N. Smithfield, RI 02896

Dear Lionel,

After lengthy deliberation and based on the facts as presented to the Local 328 Executive Board at the meeting held on November 6, 2006 the members of the board voted unanimously to deny any further action in regard to your grievance. It is the opinion of the board members that the facts relating to this matter do not qualify this case for arbitration.

We regret that circumstances have resulted in your employment being terminated and wish you well in all future endeavors.

Sincerely,

UFCW Local 328

David P. Fleming

Mr. David P. Fleming
President

DPF/gmo

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

**EXHIBIT 4**

DAVID P. FLEMING
*President*

United Food & Commercial Workers Union, Local No. 328
278 Silver Spring Street
Providence, Rhode Island 02904-2593
www.ufcw328.org
401-861-0300
1-800-624-7776 (Toll-Free)
401-331-7965 (Fax No.)