UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIONEL P. CARREIRO,<br>Plaintiff<br><br>v.<br><br>THE STOP & SHOP SUPERMARKET COMPANY, LLC, and UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 328, by and through their President, DAVID P. FLEMING and their Secretary/Treasurer, JAMES RILEY,<br>Defendants | ) | C.A. No. 07-158S |

**DEFENDANT STOP & SHOP SUPERMARKET COMPANY, LLC'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR ORAL ARGUMENT**

Pursuant to Fed. R. Civ. P. 56, defendant Stop & Shop Supermarket Company, LLC ("Stop & Shop") hereby moves this Honorable Court for the entry of summary judgment in its favor, and further moves that the Complaint of plaintiff Lionel P. Carreiro on his claim for relief pursuant to Section 301 of the Labor Management Relations Act, 19 U.S.C. §185, be dismissed in its entirety and with prejudice. As reasons therefore, Stop & Shop states that there is no genuine issue of material fact and that, as a matter of law, defendants are entitled to the entry of summary judgment.

In support of its Motion for Summary Judgment, Stop & Shop submits the accompanying Statement of Undisputed Facts, Memorandum of Law, and Affidavits of Joel Boone and Steven A. Turchetta.

REQUEST FOR ORAL ARGUMENT

Pursuant to the provisions of LR Cv 7(e), Stop & Shop additionally requests that the Court grant oral argument, wherein defendant may have the opportunity to present facts and law to the Court in further support of its Motion for Summary Judgment.

/s/ Gordon P. Cleary
Gordon P. Cleary, No. 1948
Timothy M. Bliss, No. 6228
VETTER & WHITE
Attorneys for Defendant Stop & Shop
Supermarket Company, LLC
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
gcleary@vetterandwhite.com
tbliss@vetterandwhite.com

Michael C. Lehane (Admitted *Pro Hac Vice*)
Thomas W. Colomb (Admitted *Pro Hac Vice*)
Murphy, Hesse, Toomey & Lehane, LLP
300 Crown Colony Drive, Suite 410
P.O. Box 9126
Quincy, Massachusetts 02269-9126
(617) 479-5000
(617) 479-6469 FAX

Dated: October 15, 2007

CERTIFICATE OF SERVICE

To:

Dennis J. Tente, Esq.
311 Doric Avenue
Cranston, RI 02910

Richard M. Peirce, Esq.
James A. Musgrave, Esq.
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street – 8th Floor
Providence, RI 02903-2808

Betsy Ehrenberg, Esq.
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan
18 Tremont Street – Suite 500
Boston, MA 02108

Michael C. Lehane, Esq.
Thomas W. Colomb, Esq.
Murphy, Hesse, Toomey & Lehane, LLP
300 Crown Colony Drive - Suite 410
P.O. Box 9126
Quincy, MA 02269-9126

I hereby certify that I electronically filed the within motion on October 15, 2007. The motion is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above-identified counsel of record will be effectuated by electronic means and by mailing first class mail, postage prepaid, to non-registered parties.

/s/ Gordon P. Cleary

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIONEL P. CARREIRO, Plaintiff | ) | C.A. No. 07-158S |
| v. | ) | |
| THE STOP & SHOP SUPERMARKET COMPANY, LLC, and UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 328, by and through their President, DAVID P. FLEMING and their Secretary/Treasurer, JAMES RILEY, Defendants | ) | |

**DEFENDANT STOP & SHOP SUPERMARKET COMPANY, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Stop & Shop Supermarket Company, LLC ("Stop & Shop" or "Company") submits this Memorandum of Law in Support of its Motion for Summary Judgment, seeking entry of summary judgment in its favor and against plaintiff Lionel P. Carreiro ("Mr. Carreiro") on Mr. Carreiro's sole claim for relief pursuant to Section 301 of the Labor Management Relations Act, 19 U.S.C. §185. The undisputed material facts of this case, viewed in light of the relevant law, establish that Stop & Shop did not breach the collective bargaining agreement ("CBA") in effect between itself and defendant United Food & Commercial Workers Union, Local 328 ("Local 328" or "Union"), when it terminated Mr. Carreiro for an undisputed violation of the Company's Employee Purchase Policy. Additionally, the facts and law of this case further support the finding that Local 328's decision not to arbitrate Mr. Carreiro's termination did not contravene its duty of fair representation. Accordingly, Mr. Carreiro cannot succeed on his claim under

Section 301, and summary judgment should be entered in favor of defendant Stop & Shop.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The evidence is construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "the adverse party may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original). "'[G]enuine' means that the evidence is such that a reasonable fact finder could resolve the point in favor of the nonmoving party, and 'material' means that the fact is one that might affect the outcome of the suit under the applicable law." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).

Here, the material facts of the case, as outlined in the Statement of Undisputed Facts submitted herewith, are not in dispute, and Stop & Shop's position is supported by the relevant law laid out *infra*.

## II. ARGUMENT

In so-called hybrid section 301 actions, the plaintiff faces a two-fold burden: "Because most collective-bargaining agreements accord finality to grievance or

arbitration procedures established by the collective-bargaining agreement," an employee bringing a section 301 action against an employer cannot prevail unless he establishes *both* "that the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation." Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 564 (1990). "The two claims are inextricably interdependent." United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 66 (1981) (Stewart, J., concurring in judgment). Accordingly, "claimants attempting to make the requisite showing in hybrid section 301 actions must carry a heavy burden." Mulvihill, 335 F.3d at 20. The claimant must "produce sufficient evidence from which a reasonable factfinder can conclude not only that the discharge was improper but also that the union's breach undermined the grievance process and thereby contributed to the error." Id.

The undisputed material facts of this case do not support either of the two showings Mr. Carreiro must make in order to succeed on his hybrid section 301 claim. To the contrary, the evidence supports findings that Stop & Shop's termination of Mr. Carreiro was entirely consistent with the terms of the CBA and that the union squarely met its duty of fair representation to Mr. Carreiro.

**A. *Stop and Shop had "just cause," consistent with the terms of the CBA, for terminating Mr. Carreiro for re-wrapping and discounting merchandise, without authority and for his own purchase, where the company's Associate Purchase Policy specifically prohibited such action and provided for termination upon its violation.***

Mr. Carreiro has at no point disputed that he over-wrapped and re-priced three packages of hot dogs; that he had a part-time meat clerk, who had no authority to authorize his actions, initial the package "OK;" and that he then proceeded to purchase the discounted hot dogs for his own benefit. Defendant Stop & Shop Supermarket

Company, LLC's Statement of Undisputed Facts in Support of its Motion for Summary Judgment at ¶¶ 6, 7 & 8, (hereinafter "SUF ¶¶ 6, 7 & 8").

For at least sixty (60) years, Stop & Shop has had an Employee Purchase Policy (currently captioned "Associate Purchase Policy," though identical in material content) which governs purchases and use by employee of merchandise of the Company.[1] SUF ¶ 9. The evidence demonstrates that Mr. Carreiro was specifically and repeatedly advised of the policy; indeed, his personnel file contained two signed copies of the policy. SUF ¶ 11. The undisputed facts further demonstrate that the policy was posted in Stop & Shop stores near the employee time clock. SUF ¶ 9.

The Employee Purchase Policy unequivocally prohibits the actions engaged in by Mr. Carreiro. The policy states that "reduced merchandise" is to be purchased "only after it is put on display for the general public;" that "unsaleable merchandise, including . . . out-of-code is not to be taken, used, or eaten;" and that employees were not to "wait upon themselves." SUF ¶ 10. Moreover, the Employee Purchase Policy unequivocally states that failure to follow the policy will result in disciplinary action, including termination of employment. SUF ¶ 12. Mr. Carreiro does not assert, nor can he, that his undisputed actions in re-wrapping and re-pricing the hot dogs, without authorization and for his own sole benefit, did not squarely violate the Company policy. They did. SUF ¶¶ 7 & 8.

Accordingly, the only question before this Court, vis-à-vis the propriety of the termination, is whether Mr. Carreiro's undisputed violation of the Employee Purchase

[1] For ease of identification, the policy is uniformly identified herein as the "Employee Purchase Policy." Stop & Shop has submitted true and accurate copies of all three iterations relevant to this case (i.e., the two "Employee Purchase" policies provided to Mr. Carreiro and contained in his personnel file, as well as the "Associate Purchase" policy that was posted at the time clock at the time of his termination in September/October 2006. Defendant submits that the Court will conclude, upon review, that the policy statements are identical in all material respects relevant to this case, regardless of whether the document is titled "Employee Purchase Policy" (earlier versions) or "Associate Purchase Policy" (current version), and reflect an unchanging statement of policy in effect at Stop & Shop for at least the past sixty (60) years.

Policy constituted "just cause" for his termination under the terms of the CBA between Stop & Shop and Local 328. Mulvihill, 335 F.3d at 21 (stating that resolution of the case requires "an assessment of the actions" of the employer and union "against the background understanding of 'proper cause' as that term is used in the CBA."); Crider v. Spectrulite Consortium, Inc., 130 F.3d 1238, 1242 (7th Cir. 1997) ("Whether the undisputed facts of a particular case establish just cause is a question of law for the court."). It is a matter of record that the CBA permits termination where an "employee is discharged for just cause." SUF ¶ 14.

In Hussey v. Quebecor Printing Providence, Inc., 2 F.Supp. 2d 217 (D.R.I. 1998), a hybrid section 301 case with analogous facts, this Court (Lagueux, C.J.) held that an employer acted with just cause when it terminated an employee for taking client property in violation of a posted company policy. The employee, Hussey, removed from Quebecor's premises a single discount coupon, from a set of such coupons the employer had contracted to print for the Caldor Corporation, a retailer. Hussey subsequently gave the coupon to his wife who used the coupon to make a discounted purchase at Caldor. At the time of Hussey's actions, the employer had displayed a list of plant rules on its premises, which included a Rule 9 to the effect that no employee was permitted to "remove, receive, and/or posses property which . . . is owned by the company, a customer, or any other employee." Rule 9 specified that violation of the rule amounting to a loss of greater than $50 would result in discharge, and Quebecor terminated Hussey for violation of the rule.[2] The union, following the grievance procedure and an initial demand for arbitration, eventually changed course and withdrew the demand; Hussey

[2] The coupon itself had no value on its face; however, the discount Hussey wife received by using the coupon exceeded $50.

responded by filing a hybrid section 301 suit. Hussey, 2 F.Supp. at 219-221. Upon the filing of summary judgment motions by both parties, the Court held as follows:

> [Plaintiff's] termination was in accordance with posted Plant Rule No. 9. Plaintiff's actions clearly provided Quebecor with just cause to terminate his employment and he was punished in accordance with Plant Rule No. 9, which called for his dismissal. Quebecor, in no way violated the [Collective Bargaining Agreement] . . . . Based on the undisputed facts of this case, plaintiff was terminated for just cause and there was no breach of the Agreement by Quebecor.

2 F.Supp. at 223.

Mr. Carreiro's case is analogous. His re-wrapping, re-pricing, and purchase of the out-of-code hot dogs was prohibited by the unambiguous and conspicuous Employee Purchase Policy. SUF ¶¶ 9 and 10. The policy, in turn, states unequivocally that violation is grounds for termination. SUF ¶ 12. As noted in the Affidavit of Joel Boone, a Vice President at Stop & Shop who has worked for over twenty years in labor relations management positions, Stop & Shop has an unvarying practice of terminating employees where a provable violation of the policy occurs. SUF ¶ 15. There is no dispute that Mr. Carreiro was repeatedly advised of this fact, by both Company and Local 328 officials during the contractual grievance process. SUF ¶¶ 20-23. As with the Hussey case, Mr. Carreiro's "termination was in accordance with" the Employee Purchase Policy; he was "punished in accordance with [the Policy] which called for his dismissal;" and accordingly Stop & Shop "in no way violated the [CBA]."

It is important to note that the Employee Purchase Policy is uniformly applied to all employees of the Company, and does not restrict the penalty of termination to offenses causing greater than a minimum dollar loss to the Company. SUF ¶¶ 15 and 16. The undisputed facts demonstrate that Stop & Shop has consistently imposed termination, rather than some lesser discipline, for violations of the Policy, without

regard to seniority or amount of the offense. SUF ¶ 15. Notably, arbitrators have routinely upheld terminations under the policy, noting the uniformity and consistency of the practice and finding such terminations to be consistent with the "just cause" standard. SUF ¶ 17.

In sum, the facts showing that Mr. Carreiro violated an unambiguous company policy calling for termination are not in dispute; the law supports a finding that Stop and Shop acted with "just cause" and therefore not in violation of the CBA when it terminated Mr. Carreiro as a result of his violation of the policy. Because Stop & Shop did not act in contravention of the CBA when it terminated Mr. Carreiro, Mr. Carreiro's hybrid section 301 claim fails.[3]

***B. Mr. Carreiro's claim fails additionally because Local 328 squarely met its duty of fair representation where the union advocated for Mr. Carreiro through the three steps of the grievance process but where the union thereafter determined that the facts of the case – a clear violation of an unambiguous policy calling for termination -- would not justify proceeding to arbitration.***

As stated *supra*, an employee may only succeed on a hybrid Section 301 claim upon showing both that the employer breached the CBA and that the union's representation of him was unfair. Chauffeurs 494 U.S. at 564. Accordingly, this Court may enter summary judgment in favor of Stop & Shop additionally or alternatively on the grounds that Local 328 did not violate the duty of fair representation it owed Mr. Carreiro. Local 328 is submitting a summary judgment motion concurrently with Stop & Shop's summary judgment motion in which the facts and law in support of fair

[3] In what appears to be an attempt to deflect attention from the dishonest acts for which Mr. Carreiro was in fact terminated, the Complaint alleges that Stop & Shop "was really discharging the Plaintiff as a result of seniority, pay grade and company benefits which were being negotiated between Defendant Employer and the Defendant Union at the time of the Plaintiff's discharge." These allegations are entirely unsupported by evidence and without any factual or legal basis. The allegations also fail the test of logic, since hundreds or thousands of other employees were in the same position as Carreiro vis-à-vis seniority, pay grade and benefits.

representation are explicated in greater detail. Stop & Shop reiterates and expands as follows:

There is no factual dispute in this case concerning whether Local 328 advocated for Mr. Carreiro in the three grievance steps outlined by the CBA and held on September 15, 2006, October 5, 2006, and October 16, 2006. SUF ¶¶ 20-23. The dispute between the parties centers on whether Local 328 violated its duty of fair representation when it decided not to forward Mr. Carreiro's case for arbitration. See Complaint ¶ 11 and Exhibit 4 attached thereto.

In support of his allegation of unfair representation, Mr. Carreiro's appears to argue that all steps of the grievance process, including the arbitration process, are "mandatory," and that Local 328 was therefore required to bring his case to arbitration. See Plaintiff's Statement of Claims at 2. Mr. Carreiro's assertion is false as a matter of law:

> [D]isaffected employees do not possess an absolute right to have their union shepherd a complaint through the grievance process to the bitter end. In the context of employee grievances, the duty of fair representation is not a straitjacket which forces unions to pursue grievance remedies under the collective bargaining agreement in every case where an employee has a complaint against the company.

Ayala v. Union de Tronquistas de Puerto Rico, Local 901, 74 F.3d 344, 345-46 (1st Cir. 1996) (internal quotations and citations omitted); see also Vaca v. Sipes, 386 U.S. 171, 191 (1967) (holding that the individual employee does not have "an absolute right to have his grievance taken to arbitration" and stating further that "[i]n providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration"); Hussey, 2

F.Supp.2d at 224 ("a union's duty of fair representation does not amount to an employee's absolute right to have any and every grievance taken to arbitration"); Mensah v. Newton Buying Corp., 927 F.Supp. 518, 522 (D. Mass. 1996) ("the law is well-settled that a union does not have an affirmative duty to pursue every grievance that comes before it").

It is of no consequence, as Mr. Carreiro would have us believe, that the CBA states that "the grievance *shall* be referred to the American Arbitration Association." See Agreement with The Stop & Shop Supermarket Company LLC and Local Union 328 [Meat] Chartered by United Food and Commercial Workers International Union, AFL-CIO, CLC, ("CBA") at p. 31, attached as Exhibit 1 to Affidavit of Joel Boone. (Emphasis added). This language is qualified by the phrase "[i]n the event that the Company and the Union are unable to settle a grievance," which in essence directs the Union to proceed to arbitration only where the Company and the Union are still at odds as to the fair and appropriate outcome of the grievance. The First Circuit has held that similar language in a collective bargaining agreement (stating that a grievance "*shall* be submitted to arbitration" in the case that "the Company's answer is unsatisfactory to the Union") does not constitute a guarantee to employees "that every grievance will be arbitrated," but, to the contrary, "leaves to the Union's sole discretion the decision as to whether to request arbitration." Mulvihill, 335 F.3d at 24. Here, Local 328 and Stop & Shop were in agreement that they had reasonably and fairly concluded the grievance, albeit with an outcome not to the ultimate satisfaction of Mr. Carreiro himself. But Mr. Carreiro's disappointment with the outcome of the grievance process, without anything else, did not entitle him to arbitration.

Rather, in order to show that Local 328 violated its duty of fair representation, Mr. Carreiro must establish that the "union's conduct toward a member of the collective bargaining unit [was] arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at 190. As such, Mr. Carreiro can establish a breach of the duty of fair representation only upon a showing that the decision not to proceed to arbitration was "'so far outside a wide range of reasonableness as to be irrational,'" or "based on invidious or irrational distinctions between members," or tainted by "'fraud, deceitful action or dishonest conduct.'" Wilson v. U. of Mass Memorial Med. Ctr., 2007 WL 2507733, slip op. at *6 (D. Mass 2007) (quoting and citing Miller v. U.S. Postal Service, 985 F.2d 9, 12 (1st Cir. 1993), Airline Pilots Assoc. v. O'Neill, 499 U.S. 65, 78-81 (1991), Cross v. United Auto Workers, Local 1762, 450 F.3d 844 (8th Cir. 2006), respectively).

This is a difficult standard to meet under the most favorable of fact scenarios and plainly beyond Mr. Carreiro's reach. The conclusion in Hussey, *supra,* that the union in that case, facing analogous facts, reasonably refused to proceed to arbitration, applies equally here:

> Given the facts of this case, plaintiff falls remarkably short of being able to prove that the Union violated its duty of fair representation. . . . No more can be expected of the Union when one of its members admits to stealing from the employer and the employer discharges the union member in accordance with posted plant rules.

2 F.Supp.2d at 224-25. "[A] union is entitled to decide that certain grievances lack sufficient merit to justify arbitration without breaching its duty of fair representation." Newbanks v. Central Gulf Lines, Inc., 64 F.Supp.2d 1, 4 (1999). The law does not require a union to arbitrate a "case that it felt had little basis in contract," Berrigan v.

Greyhound Lines, Inc., 782 F.2d 295, 298 (1st Cir. 1986). Local 328's decision not to proceed to arbitration was thus clearly well within "the wide range of reasonableness."

Mr. Carreiro advances one more theory – that Local 328 acted in bad faith when it held the Executive Board meeting to consider arbitration past the seven days specified in the CBA. According to the terms of Section 2 of Article 29, a grievance unresolved following the grievance procedure of Section 1 is to be referred to arbitration "seven (7) days after last discussion between the Company and the representative of the Union." See CBA at p. 31. Mr. Carreiro argues that, because the Executive Board did not meet until November 6, 2006, more than seven days after the third-step meeting that took place on October 16, 2006, the meeting was conducted in "bad faith." Plaintiff's Statement of Claims at 2.

This argument fails for a number of reasons. First, the undisputed facts indicate that Local 328 had already informed Mr. Carreiro as of October 16, 2006, that the Union viewed further action on his grievance as unlikely to yield a different result. The Associate Counseling Record of October 16, 2006, notes that "the union representatives explained to [Mr. Carreiro] that it is consistant [sic] practice that violation of the associate purchase policy results in termination [and that] the company's position of termination would be upheld." SUF ¶ 23. Mr. Carreiro, in turn, has provided no explanation for why, already informed of the union's position, he waited to write to Local 328 to demand arbitration until October 23, 2006. SUF ¶ 24. Local 328 thereafter promptly replied (SUF ¶ 25), acknowledging Mr. Carreiro's request "to appeal the decision to arbitrate your termination" and scheduling an appearance before the Board on November 6th. It was at this meeting that the Executive Board denied any further action

on Mr. Carreiro's grievance. SUF ¶ 26. All evidence therefore shows that Local 328 responded promptly and in good faith to Mr. Carreiro's request to reconsider arbitration.

Even if Local 328's actions in holding the Executive Meeting past the seven-day period could be considered negligent or erroneous, however, this would not change the outcome of these summary judgment proceedings. "[M]ere negligence or erroneous judgment will not constitute a breach of the duty of fair representation." Miller, 985 F.2d at 12. The First Circuit has stated that "the grievance processes cannot be expected to be error-free . . . . Because efficiency is a fundamental concern of both union and management in hybrid section 301 actions, minor errors are tolerable." Mulvihill, 335 F.3d at 26, n.4 (internal quotations and citations omitted). The undisputed facts show that the delay had no impact on the outcome of the case and was thus in no way prejudicial to Mr. Carreiro. Moreover, Mr. Carreiro has pointed to no evidence that suggests that the seven-day provision in any way affected the Board's decision not to proceed to arbitration; nor has he produced any evidence to suggest that, had the Board come to the opposite conclusion, Stop & Shop would have refused to arbitrate simply because seven days had already elapsed. As such, the delay in the final decision not to arbitrate was at most a non-prejudicial and minor mistake, and does not detract from Local 328's otherwise fair representation of Mr. Carreiro.

In sum, Mr. Carreiro cannot show that Local 328's representation of him was unfair. Accordingly, and because Mr. Carreiro's claim against Stop & Shop is "inextricably interdependent" with the claim against Local 328, summary judgment in favor of Stop & Shop may alternatively and/or additionally be entered on this ground. United Parcel Service, 451 U.S. at 66-67.

## III. CONCLUSION

For all of the foregoing reasons, defendant Stop & Shop respectfully requests that this Honorable Court enter summary judgment in its favor and dismiss plaintiff's Complaint in its entirety and with prejudice.

/s/ Gordon P. Cleary
Gordon P. Cleary, No. 1948
Timothy M. Bliss, No. 6228
VETTER & WHITE
Attorneys for Defendant Stop & Shop
Supermarket Company, LLC
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
gcleary@vetterandwhite.com
tbliss@vetterandwhite.com

Michael C. Lehane (Admitted *Pro Hac Vice*)
Thomas W. Colomb (Admitted *Pro Hac Vice*)
Murphy, Hesse, Toomey & Lehane, LLP
300 Crown Colony Drive, Suite 410
P.O. Box 9126
Quincy, Massachusetts 02269-9126
(617) 479-5000
(617) 479-6469 FAX

Dated: October 15, 2007

CERTIFICATE OF SERVICE

To:

Dennis J. Tente, Esq.
311 Doric Avenue
Cranston, RI 02910

Richard M. Peirce, Esq.
James A. Musgrave, Esq.
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street – 8th Floor
Providence, RI 02903-2808

Betsy Ehrenberg, Esq.
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan
18 Tremont Street – Suite 500
Boston, MA 02108

Michael C. Lehane, Esq.
Thomas W. Colomb, Esq.
Murphy, Hesse, Toomey & Lehane, LLP
300 Crown Colony Drive - Suite 410
P.O. Box 9126
Quincy, MA 02269-9126

I hereby certify that I electronically filed the within memorandum on October 15, 2007. The memorandum is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above-identified counsel of record will be effectuated by electronic means and by mailing first class mail, postage prepaid, to non-registered parties.

/s/ Gordon P. Cleary