UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LIONEL P. CARREIRO, Plaintiff | ) | |
| | ) | C.A. No. 07-158S |
| v. | ) | |
| THE STOP & SHOP SUPERMARKET COMPANY, LLC, and UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 328, by and through their President, DAVID P. FLEMING and their Secretary/Treasurer, JAMES RILEY, Defendants | ) | |

**DEFENDANT STOP & SHOP SUPERMARKET COMPANY, LLC'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

In compliance with Local Rule Cv 56 and in support of its Motion for Summary Judgment, defendant Stop & Shop Supermarket Company, LLC ("Stop & Shop" or "Company") respectfully submits that the following facts are undisputed:

1. Stop & Shop operates a supermarket located on Mendon Road in Cumberland, Rhode Island. Answer of Defendant Stop & Shop Supermarket Company, LLC at ¶ 2 (hereinafter, Stop & Shop Answer, ¶ 2); Answer of Defendant United Food & Commercial Workers Local 328 at ¶ 2 (hereinafter, Local 328 Answer, ¶ 2). See also Complaint, ¶ 2.

2. Plaintiff, Lionel P. Carreiro ("Carreiro"), an individual residing in the Town of North Smithfield, Rhode Island, was employed by Stop & Shop, in its Meat Department, beginning in June 1987, and continuously through October, 2006. Stop & Shop Answer, ¶¶ 1, 4. Local 328 Answer, ¶ 4. See also Complaint, ¶¶ 1, 4. During the course of his employment, Carreiro worked in more than one supermarket location, but

his final assignment was to the store located on Mendon Road in Cumberland, Rhode Island. Stop & Shop Answer, ¶ 4.

3. Defendant United Food & Commercial Workers Union Local 328 ("Local 328" or "Union") was at all relevant times the collective bargaining agent of a bargaining unit comprised of certain non-supervisory employees of Stop & Shop in the Meat, Fish, Delicatessen, Bazaar, Cold Food, Bake Off, and Poultry Departments, inclusive of Mr. Carreiro. Stop & Shop Answer, ¶ 3. Local 328 Answer, ¶ 3. See also Agreement with the Stop & Shop Supermarket Company LLC and Local Union 328 [Meat] Chartered by United Food and Commercial Workers International Union, AFL-CIO-CLC, Effective Date February 15, 2004, Expiration Date February 17, 2007 (hereinafter "CBA"), attached as Exhibit 1 to Affidavit of Joel Boone, dated October 12, 2007 and submitted herewith (hereinafter Boone Aff.), at page 1, Section 1 "Agreement." See also Complaint, ¶ 3.

4. At all times relevant to this dispute, a collective bargaining agreement entered into by Local 328 and Stop & Shop on February 15, 2004, for the benefit of the members of the bargaining unit, was in effect. Stop & Shop Answer, ¶ 5; Local 328 Answer, ¶5; Boone Aff., ¶ 11 and Exhibit 1 (CBA). See also Complaint, ¶ 5.

5. Steven A. Turchetta is employed as the Store Manger of the Stop & Shop supermarket located in Cumberland, Rhode Island, and held this role at the time of plaintiff Carreiro's suspension on September 13, 2006, and subsequent discharge in October 2006. Affidavit of Steven A. Turchetta, dated October 12, 2007 and submitted herewith, ¶¶ 1, 3 (hereinafter, Turchetta Aff. ¶ 1, 3).

6. On September 13, 2006, following his shift in the Meat Department at the Mendon Road store, Mr. Carreiro made a purchase at the registers. Upon inspection

of the purchase, Robert Di Sano, an Asset Protection Detective employed by Stop & Shop, with Steve Carbon, a Perishable Manager, as witness, found three packages of hot dogs. The packages of hot dogs, which had an expiration date of September 12, 2006 ("out of code"), had been over-wrapped into one package and re-labeled at a discounted price. Stop & Shop Answer, ¶ 7. Local 328 Answer, ¶ 7. Boone Aff., 12. A true and accurate copy of the Loss Prevention Incident Report created by Mr. Di Sano (hereinafter "Loss Prevention Report") is attached as Exhibit 2 to the Affidavit of Joel Boone. See also Complaint, ¶ 7.

7. Mr. Carreiro told Mr. Di Sano that he had personally re-wrapped and re-priced the packages of hot dogs, using a miscellaneous meat label that allowed him to insert a discounted retail price of his choice. Stop & Shop Answer, ¶ 7. Loss Prevention Report, attached as Exhibit 2 to the Affidavit of Joel Boone. Turchetta Aff., ¶¶ 4, 5. Boone Aff., ¶ 13. See also 9/15/2006 Associate Counseling Record, a true and accurate copy of which is attached as Exhibit 3 to the Affidavit of Joel Boone. Carreiro further admitted that he had had a part-time meat clerk, who did not have authority to mark down products, write "OK" on the package. Id.

8. At no point in the course of this dispute has Mr. Carreiro denied that he took it upon himself to re-package and re-price the out-of-code hot dogs for his personal purchase. Turchetta Aff., ¶¶ 5, 7. Boone Aff., ¶ 17. 9/15/2006 Associate Counseling Record, attached as Exhibit 3 to Affidavit of Joel Boone. See also 10/6/2006[1] Associate Counseling Record, a true and accurate copy of which is attached as Exhibit 4 to the Affidavit of Joel Boone, and 10/16/2006 Associate Counseling Record, a true and accurate copy of which is attached as Exhibit 5 of to the Affidavit of Joel Boone.

[1] The Record is erroneously dated October 6, 2007.

9. For at least the last sixty (60) years, Stop & Shop has had an Employee Purchase Policy (now captioned "Associate Purchase Policy") which governs purchases and use by employees of merchandise of the Company. Boone Aff., ¶ 7. The policy provides that employees must pay the full retail price for all merchandise before taking or removing it, that they may not take or remove damaged, broken or out of code merchandise, that they may not wait upon themselves, purchase out of code product, or purchase reduced merchandise until after it has been made available to the public. Boone Aff., ¶ 8. A true and accurate copy of Stop & Shop's Associate Purchase Policy, which was posted at the employee time clock at all relevant times, is attached to the 9/15/2006 Associate Counseling Report. See Exhibit 3 to Affidavit of Joel Boone. See also Turchetta Aff., ¶ 5.

10. The Associate Purchase Policy states, *inter alia*, that:

> . . .
> 2. Associate purchases and/or packages can be inspected by the Store Manager, security personnel, any member of management, or any Department Manager designated by the Store Manager.
> . . .
> 5. Reduced merchandise is only to be purchased after it is put on display for the general public.
> 6. All associates are required to pay for the merchandise at the full retail price in effect the day it is purchased.
> . . .
> 12. Unsaleable merchandise, including broken package and out-of-code product, is not to be taken, used or eaten.
> 13. Employees are not permitted to wait upon themselves or their relatives and friends.
> . . .

See Exhibit 3 to Affidavit of Joel Boone.

11. Mr. Carreiro's personnel file contained two signed copies of the Employee Purchase Policy in effect at the time of his hire, and an Acknowledgement that "he had been instructed on and fully underst[ood]" the Employee Purchase Policy.

Turchetta Aff., ¶ 5. Boone Aff., ¶ 16. True and accurate copies of the signed policies and acknowledgement are attached as Exhibit 6 to the Affidavit of Joel Boone.

12. The Employee Purchase Policy unequivocally provides that failure to follow the policy will result in disciplinary action, including termination of employment. See Exhibits 3 and 6 to the Affidavit of Joel Boone.

13. On September 13, 2006, following the discovery that Mr. Carreiro had over-wrapped, re-priced, and then purchased the hot dogs, Mr. Carreiro was suspended pending termination for violation of the Employee Purchase Policy. Stop & Shop Answer, ¶ 7. Local 328 Answer, ¶ 7. Loss Prevention Report, attached as Exhibit 2 to Affidavit of Joel Boone. Carreiro was told to contact his union representative. Id.

14. Article 25, clause H of the CBA provides that an "employee shall be terminated in the event . . . the employee is discharged for just cause." CBA at p. 24, attached as Exhibit 1 to Affidavit of Joel Boone.

15. Where a provable violation of the Employee Purchase Policy occurs, as was undisputed by Carreiro, Stop & Shop has an unvarying disciplinary response of terminating the employee without regard to the value of the merchandise involved or the length or quality of the employee's prior service. Boone Aff., ¶ 9.

16. The Employee Purchase Policy, and the unvarying termination of employees who violate the policy, is applied uniformly to all employees, including those in bargaining units, non-bargaining unit supervisors and managers, security employees and all others. Boone Aff., ¶ 8.

17. Stop & Shop's policy and practice of terminating employees who violate the Employee Purchase Policy has been upheld over the years by arbitrators appointed through the procedures of the American Arbitration Association and the

Employment Relations Board of every jurisdiction where Stop & Shop does business. Such arbitrators have commented on numerous occasions about the uniformity and consistency of the Company's policy and have commented that it is justified and consistent with the "just cause" standard. Boone Aff., ¶ 10.

18. Article 29 of the CBA, titled "Grievances and Arbitrations" provides for a three-step grievance procedure for employees. CBA at pp. 30-31, attached as Exhibit 1 of Affidavit of Joel Boone. In the First Step, the steward or union representative and the meat department head or store manager meet to try to resolve the grievance. If the grievance is not settled, the union representative meets with Stop & Shop's Market Supervision to attempt to settle the grievance in a Second Step meeting. If the grievance is still not settled, a Third Step meeting is held between Stop & Shop's Labor Relations Division and the union representative to try to resolve the issue. Id.

19. Section 2 of Article 29 of the CBA additionally provides that "[i]n the event that the company and the Union are unable to settle a grievance, then seven (7) days after last discussion between the company and the representative of the Union the grievance shall be referred to the American Arbitration Association whose decision shall be final and binding on both parties." CBA at p. 31, attached as Exhibit 1 of Affidavit of Joel Boone. Further, under Section 2, after a demand for arbitration has been filed, the parties may engage in voluntary grievance mediation. Id.

20. Pursuant to Article 29, a First Step grievance meeting was held on September 15, 2006, in which Mr. Carreiro, along with the Local 328 union representative Mike Matias, met with Store Manager Steven Turchetta. Turchetta Aff., ¶¶ 4, 5. 9/15/2006 Associate Counseling Record, attached as Exhibit 3 to Affidavit of Joel Boone. In the meeting, Stop & Shop expressed its position that it would not reinstate

Mr. Carreiro due to his material, undisputed violation of the Employee Purchase Policy. Id.

21. A Second Step grievance meeting was held on October 6, 2006, with Mr. Carreiro, Mr. Matias, Mr. Turchetta, and Glenn Hogan of the Stop & Shop Associate Relations Department present. Stop & Shop Answer, ¶ 8. Local 328 Answer, ¶ 8. Turchetta Aff., ¶ 6. 10/6/2006 Associate Counseling Record, attached as Exhibit 4 to Affidavit of Joel Boone. See also Complaint, ¶ 8. At the meeting, Mr. Carreiro admitted to re-wrapping the hot dogs and reducing the price for his own purchase. 10/6/2006 Associate Counseling Record, attached as Exhibit 4 to Affidavit of Joel Boone. Boone Aff., ¶ 17. Mr. Hogan explained Stop & Shop's consistent practice of termination for violation of company policy and related that the Company would not reinstate Mr. Carreiro. Stop & Shop Answer, ¶ 8. Turchetta Aff., ¶ 6. 10/6/2006 Associate Counseling Record, attached as Exhibit 4 to Affidavit of Joel Boone.

22. A Third Step grievance meeting was held on October 16, 2006, with Mr. Carreiro, Mr. Turchetta, Mr. Hogan and Mr. Matias present, as well as Domenic Pontarelli, another Local 328 representative, and Bill Dickey, of the Stop & Shop Associate Relations Department. Stop & Shop Answer, ¶ 8. Local 328 Answer, ¶ 8. Turchetta Aff., ¶ 7. 10/16/2006 Associate Counseling Record, attached as Exhibit 5 to Affidavit of Joel Boone. See also Complaint, ¶ 8. Neither Mr. Carreiro nor his representatives disputed the facts upon which the Company had determined that Carreiro's discharge was required. Turchetta Aff., ¶ 7. Boone Aff., ¶ 17. 10/16/2006 Associate Counseling Record, attached as Exhibit 5 to Affidavit of Joel Boone. Mr. Dickey reiterated that Stop & Shop has a "zero tolerance" policy for the violation of company policy which Mr. Carreiro admitted, and that such violations consistently result

in termination. Turchetta Aff., ¶ 7. 10/16/2006 Associate Counseling Record, attached as Exhibit 5 to Affidavit of Joel Boone. Mr. Dickey further explained that Mr. Carreiro's re-wrapping and re-labeling the hot dogs at a lower retail price for his own benefit was a direct violation of the Employee Purchase Policy. 10/16/2006 Associate Counseling Record, attached as Exhibit 5 to Affidavit of Joel Boone.

23. At the same meeting, the union representatives expressed to Mr. Carreiro that Stop & Shop indeed has a consistent practice of terminating employees for such a violation of company policy, and stated further that they believed Stop & Shop's position of termination would be upheld. 10/16/2006 Associate Counseling Record, attached as Exhibit 5 to Affidavit of Joel Boone.

24. Nevertheless, Mr. Carreiro wrote to David Fleming, President of Local 328, on October 23, 2006, stating, "I have decided to proceed with the arbitration procedure." Local 328 Answer, ¶ 9. See also Complaint, ¶9, and Exhibit 2 attached to Complaint.

25. Mr. Fleming responded by letter dated October 26, 2006, that Mr. Carreiro's request "to appear before the Executive Board to appeal the decision to arbitrate [his] termination" had been received and that he was scheduled to appear before the Board on Monday, November 6, 2006. Local 328 Answer, ¶ 11. See also Complaint, ¶11 and Exhibit 3 attached to the Complaint.

26. Following the meeting of the Executive Board of the Local 328 on November 6, 2006, the Board "voted unanimously to deny any further action in regard to [his] grievance" because the facts relating to this matter do not qualify this case for arbitration." Local 328 Answer, ¶ 11. See also Complaint, ¶11 and Exhibit 4 attached to

the Complaint. Mr. Carreiro was informed of the decision by letter dated November 16, 2006. Id.

27. Thereafter, Mr. Carreiro filed suit in Rhode Island Superior Court on April 6, 2007, alleging that Stop & Shop "discharged Plaintiff without just cause, in breach and in violation of Plaintiff's rights under the Collective Bargaining Agreement" and that Local 328 "breached its duty of fair representation owing to the Plaintiff in the processing of the grievance filed on Plaintiff's discharge." Complaint, ¶1 under "Wherefore." Stop & Shop, with the consent of Local 328, removed said case to this Honorable Court, the United States District Court for the District of Rhode Island.

/s/ Gordon P. Cleary
Gordon P. Cleary, No. 1948
Timothy M. Bliss, No. 6228
VETTER & WHITE
Attorneys for Defendant Stop & Shop
Supermarket Company, LLC
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
gcleary@vetterandwhite.com
tbliss@vetterandwhite.com

Michael C. Lehane (Admitted *Pro Hac Vice*)
Thomas W. Colomb (Admitted *Pro Hac Vice*)
Murphy, Hesse, Toomey & Lehane, LLP
300 Crown Colony Drive, Suite 410
P.O. Box 9126
Quincy, Massachusetts 02269-9126
(617) 479-5000
(617) 479-6469 FAX

Dated: October 15, 2007

CERTIFICATE OF SERVICE

To:

Dennis J. Tente, Esq.
311 Doric Avenue
Cranston, RI 02910

Richard M. Peirce, Esq.
James A. Musgrave, Esq.
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street – 8th Floor
Providence, RI 02903-2808

Betsy Ehrenberg, Esq.
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan
18 Tremont Street – Suite 500
Boston, MA 02108

Michael C. Lehane, Esq.
Thomas W. Colomb, Esq.
Murphy, Hesse, Toomey & Lehane, LLP
300 Crown Colony Drive - Suite 410
P.O. Box 9126
Quincy, MA 02269-9126

I hereby certify that I electronically filed the within statement of undisputed facts on October 15, 2007. The statement of undisputed facts is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above-identified counsel of record will be effectuated by electronic means and by mailing first class mail, postage prepaid, to non-registered parties.

/s/ Gordon P. Cleary