UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LIONEL CARREIRO,

Plaintiff,

vs.

THE STOP & SHOP SUPERMARKET COMPANY, LLC, and UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL 328,

Defendants.

**Docket No.: 07-158**

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANT UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL 328 AND REQUEST FOR ORAL ARGUMENT**

Pursuant to Rule 56, Federal Rules of Civil Procedure, Defendant United Food & Commercial Workers Union Local 328 ("Local 328" or "the Union") hereby respectfully requests that this Honorable Court enter judgment in its favor on Plaintiff's Complaint for relief under Section 301, Labor-Management Relations Act, 29 U.S.C. §185, and further requests that the Court dismiss with prejudice Plaintiff's Complaint in its entirety. The reason for this motion is that there are no disputes of material fact and Defendant Local 328 is entitled to judgment as a matter of law.

In support of this Motion, Local 328 submits a Statement Of Undisputed Facts In Support Of Motion For Summary Judgment, Affidavit of David P. Fleming (with attached Exhibits 1-6), Affidavit of Michael Matias (with attached Exhibit 1), and Memorandum Of Law In Support Of Motion For Summary Judgment.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule Cv 7(e), Local 328 respectfully requests to be heard in oral argument on this Motion. Local 328 anticipates needing approximately twenty minutes for such argument.

Respectfully submitted,

UNITED FOOD & COMMERCIAL
WORKERS UNION LOCAL 328,

Defendant,
By its attorneys,

/s/Richard M. Peirce
Richard M. Peirce, No. 0564
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street, 8th Floor
Providence, RI 02903-2808
401-521-7000

/s/Betsy Ehrenberg
Betsy Ehrenberg (Admitted *Pro Hac Vice*)
*Pyle, Rome, Lichten, Ehrenberg*
*& Liss-Riordan, PC*
18 Tremont Street, Suite 500
Boston, MA 02108
617-367-7200
617-367-4820 (fax)

Dated: November 16, 2007

*Certificate of Service*

To:
Dennis J. Tente, Esquire
Coletti & Tente
311 Doric Avenue
Cranston, RI 02910
(By Telecopier and 1st Class Mail, postage pre-paid)

Gordon P. Cleary, Esquire
Vetter & White
20 Washington Place
Providence, RI 02903
(By Electronic Mail)

Michael C. Lehane, Esquire
Thomas W. Colomb, Esquire
Murphy, Hesse, Toomey & Lehane
World Trade Center East
Two Seaport Lane
Boston, MA 02210
(By Electronic Mail)

Richard M. Peirce, No. 0564
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street, 8th Floor
Providence, RI 02903-2808
401-521-7000
(By Electronic Mail)

I hereby certify that on November 16, 2007, I caused the above Motion For Summary Judgment to be electronically filed. The Motion is available for viewing and downloading from the Court's Electronic Case Filing system. A copy of this Motion will be served on the above counsel of record by telecopier and first class mail, postage pre-paid, and by electronic mail, as specified above.

/s/Betsy Ehrenberg
Betsy Ehrenberg

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LIONEL CARREIRO,<br><br>Plaintiff,<br><br>vs.<br><br>THE STOP & SHOP SUPERMARKET COMPANY, LLC, and UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL 328,<br><br>Defendants. | **Docket No.: 07-158**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL 328** |

Defendant United Food and Commercial Workers Union Local 328 ("Local 328" or "the Union") submits this Memorandum of Law in support of its Motion for Summary Judgment on Plaintiff Lionel Carreiro's ("Carreiro's") claim, under Section 301 of the Labor Management Relations Act, that Local 328 breached its duty of fair representation by declining to arbitrate the grievance of his discharge from employment. As set forth more fully below, there are no disputes of material fact concerning Carreiro's termination for violating the Employee Purchase Policy of Defendant The Stop & Shop Supermarket Company, LLC ("Stop & Shop" or "the Company"), nor concerning the Union's representation of Carreiro through all three steps of the contractual grievance procedure. Applying well-established standards of federal labor law to the undisputed facts in this case establishes plainly that Local 328 is entitled to judgment that it did not violate its duty to Carreiro when it declined to

submit the grievance to arbitration. Equally clear, as a matter of law, co-Defendant Stop & Shop is entitled to judgment on Carreiro's claim that his termination violated Stop & Shop's collective bargaining agreement with Local 328, because well-established law requires Carreiro to succeed in his claim against Local 328 – which he cannot do – in order to prosecute a contractual claim in this Court against Stop & Shop. Moreover, as a matter of law, Mr. Carreiro could not prevail on the merits of his claim that his termination violated the labor agreement, in light of undisputed evidence of the Company's publication and enforcement of the rules Mr. Carreiro admitted to violating. Accordingly, this Court should enter judgment for Defendants Local 328 and Stop & Shop and dismiss Mr. Carreiro's complaint, with prejudice, in its entirety.

## I. The Summary Judgment Standard

Summary judgment should enter where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). In effect, a party moving for summary judgment in a case in which the non-moving party has the burden of proof at trial must demonstrate that the party opposing the motion has "no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 716 (1991). See, e.g., *Plumley v. Southern Container, Inc.*, 303 F.3d 364, 368 (1st Cir. 2002) ("The role of summary judgment is to look behind the façade of the pleadings and assay the parties' proof in order to determine whether a trial is

required"); *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) citing, *Plumley*, 303 F.3d at 368.

In evaluating whether summary judgment is appropriate, the court must view the evidence produced in a light most favorable to the non-movant, and "indulge all reasonable inferences in that party's favor." *Mulvihill*, 335 F.3d at 19; see, also, *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, a party opposing a motion for summary judgment must produce specific, credible evidence of a genuine conflict concerning a material fact. *Mulvihill*, 335 F.3d at 19. "For this purpose, 'genuine' means that the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party, and 'material' means that the fact is one that might affect the outcome of the suit under the applicable law. [Citation omitted]." Id.

In this case, as set forth more fully below, the Plaintiff cannot point to any disputed material facts that would render triable his claim that the Union breached its duty of fair representation to him, or that his termination violated the Collective Bargaining Agreement. Applying deeply rooted principles of federal labor law to the undisputed facts in this case compels entry of judgment for Defendant Local 328 and, as well, for the Defendant Company.

## II. Federal Common Law Governs Plaintiff's Claims And Requires That Judgment Enter For Local 328 Because The Union Did Not Breach Its Duty Of Fair Representation And Plaintiff Could Not Succeed At Arbitration Under The Collective Bargaining Agreement

Federal common law provides the governing rules and substantive standards in so-called hybrid section 301 actions, such as the Plaintiff's complaint here states. *Mulvihill,* 335 F.3d at 20. Plaintiff's claims against the Union and the Company are inextricably intertwined. Id. Where a plaintiff claims the Union breached its duty of fair representation by failing to arbitrate a grievance on his behalf, the Plaintiff must prove not only that the Union's conduct fell below the legal standard, but that his grievance was meritorious, i.e., that the employer violated the CBA. See, e.g., *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564 (1990) ("*Teamsters*") (plaintiff in section 301 action against employer must prove both the employer's contract violation and the union's breach of duty of fair representation); *Ooley v. Schwitzer Division,* 961 F.2d 1293, 1304 (7th Cir. 1992) (citing cases) ("an employee cannot prevail on a fair representation claim based on the union's failure to process a grievance if the employee's [contractual] claim lacks merit"); *Conn v. GATX Terminals Corp.,* 18 F.3d 417, 420 (7th Cir. 1994) ("[U]nless there was a violation of the collective bargaining agreement, a violation of the duty of fair representation could not have harmed [the employee]. He would not have had a good claim for the union to prosecute on his behalf"). As stated by the United States Court of Appeals for the First Circuit, "Such a case may proceed only if, and to the extent that, the claimant can show that the checks and balances built into the CBA's internal dispute resolution process have failed to function. [Citation omitted] ... [T]he claimant must prove an erroneous discharge, a breach of duty on the union's part, and a causal nexus between the two, that is, "that [the] union's breach of its duty 'seriously undermine[d] the integrity of the

[grievance] process."[1] *Mulvihill*, 335 F.3d at 20. There is no doubt the Plaintiff "carr[ies] a heavy burden." Id. Nor is there any doubt the Plaintiff here cannot meet that burden.

**A. The Union Was Not Obligated To Submit The Grievance Of Mr. Carreiro's Termination To Arbitration And Acted Fairly In Determining Not To Do So.**

In *Vaca v. Sipes*, the United States Supreme Court reiterated the standard by which a union's conduct is measured specifically in the context of a claim challenging a union's decision not to arbitrate a grievance: "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. ... Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration." *Vaca v. Sipes*, 386 U.S. 171, 190-191, 87 S. Ct. 903, 116-117 (1967). See, also, *Sarnelli v. Amalgamated Meat Cutters and Butcher Workmen of North America, Local #33 et al.*, 457 F.2d 807 (1972) (1st Cir. 1972) (Per Curiam) ("The only burden upon a union is to act fairly and in good faith, something considerably less than a duty of support measured solely with reference to the member [citation to *Vaca*, 386 U.S. at 190-193, et al. omitted]).

In providing guidance to the lower courts, the Supreme Court further has held that "a union's actions are arbitrary only if, in light of the factual and legal landscape at

---

1 Conversely, as correctly argued by Defendant Stop & Shop in its Memorandum In Support of Its Motion for Summary Judgment, the Plaintiff cannot succeed in his claim that the Company breached the collective bargaining agreement unless he also can prove the union breached its duty of fair representation. See, Memorandum In Support of Its Motion For Summary Judgment, at 2-3, 7, citing, *Teamsters*, 494 U.S. at 564.

the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S. Ct. 681, 686 (1953), as to be irrational." *Air Line Pilots Association, International v. O'Neill et al.*, 499 U.S. 65, 67, 111 S. Ct. 1127, 1130 (1991) ("*O'Neill*"). Otherwise stated, "the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. [Citation omitted]." *O'Neill,* 499 U.S. at 76, 111 S. Ct. at 1134-35.

This Court has applied the above principles in a case with remarkable similarities to the instant action - and virtually identical defendants - though with facts far more susceptible to dispute concerning the underlying charge against the employee. See, *Sarnelli v. Amalgamated Meat Cutters and Butcher Workmen of North America, Local #33 and Stop & Shop, Inc.*, 333 F. Supp. 228 (D. Mass. 1971), aff'd, 457 F.2d 807 (1st Cir. 1972) ("*Sarnelli II*").[2] In *Sarnelli*, in the face of a grievant's denial of the purchase policy violation for which he was terminated, the union nevertheless declined to arbitrate his grievance. This Court held that the union did not breach its duty when it "acted reasonably in believing that the matter could not be successfully arbitrated in the [grievant's] interests." *Sarnelli,* 333 F. Supp. at 231.

The plaintiff in *Sarnelli* had been employed as a meat cutter by defendant Stop & Shop and was observed by an acting store manager placing a box on the loading dock

---

[2] In 1979, The Amalgamated Meat Cutters and Butcher Workmen of North America merged with the Retail Clerks International Union to form the United Food and Commercial Workers Union.

behind the meat counter. *Sarnelli,* 333 F. Supp. at 229. At the same time, the manager observed a car parked adjacent to the meat department with an open trunk. *Sarnelli,* 333 F. Supp. at 230. When the manager approached the car, it sped away. Id. A co-worker of the plaintiff identified the car's occupants as two men he had seen speaking with Sarnelli at length that same evening. Id. Immediately thereafter, the acting manager telephoned his manager and, as directed, suspended Sarnelli. Following further investigation by the Company's security department, including interviews with employee witnesses, Sarnelli was terminated for his apparent participation in attempting to steal Company product. Id.

Sarnelli sought Union representation and denied having been on the loading platform at any time that night. *Sarnelli,* 333 F. Supp. at 230. Two union officers spoke with Sarnelli and met with Company representatives to discuss the case. Id. After meeting with the Company, reviewing witness statements provided by two co-workers of Sarnelli, and interviewing the Shop Steward, the Union determined not to take Sarnelli's case to arbitration. Id. Sarnelli then sued the Union and the Company in a hybrid section 301 action. Id., at 231.

Notwithstanding that no product ever left the company's premises and that the grievant denied any involvement in such a scheme, this Court held that the Union "conducted a reasonable investigation of the incident, ... had a basis in fact ... to believe that Sarnelli was, in fact, engaged in purloining meat products from Stop & Shop, ... acted reasonably [in consulting the union's counsel] ... and that there was no breach by

[the Union or the Company] ... of any obligation owed to Sarnelli...." Id. at 231. The Court explained:

> ... the question before this court is not whether in fact Sarnelli stole property of the Stop & Shop, but whether the representatives of Local #33 conducted a reasonable investigation in his behalf to determine whether or not to process his case to arbitration pursuant to the grievance procedures set out in the collective bargaining agreement between Stop & Shop and Local #33. A secondary issue involved herein is whether or not Stop & Shop had legally sufficient grounds to terminate Sarnelli's employment.

Id. See, also, e.g., *Ayala v. Union de Tronquistas de Puerto Rico, Local 901*, 913 F. Supp. 74, 79 (D.P.R., 1995), aff'd, *Ayala v. Union de Tronquistas de Puerto Rico, Local 901*, 74 F.3d 344, 345-346 (1st Cir. 1996) ("A union does not have a duty to arbitrate a worker's grievance if the union honestly and in good faith believes that the grievance is without merit. [Citation omitted]. Moreover, the union must balance and consider the legitimate interests of all of its members").

Here, unlike in *Sarnelli*, there is no question of whether or not the Plaintiff engaged in the conduct for which he was terminated. To his credit, Mr. Carreiro never denied any aspect of his conduct in rewrapping, re-pricing, and setting aside for himself the package of hot dogs. Nor is there any question that the Union represented Mr. Carreiro through three steps of the contractual grievance procedure; the Plaintiff makes no claim - nor could he - that the representation he received through Representatives Matias and Pontarelli was perfunctory, arbitrary, or discriminatorily hollow. All that is at issue is the Union's determination not to arbitrate the case. In light of the facts set forth in the Union's Statement of Undisputed Facts, the Union clearly had a "basis in fact" for its decision, *Sarnelli*, 333 F. Supp. at 231, more than met its duty to act "fairly

and in good faith," *Sarnelli II*, 457 F.2d at 807, and arrived at a decision that fell well within the "wide range of reasonableness" accorded unions enforcing their collective bargaining agreements. *O'Neill*, 499 U.S. 65 at 67, 111 S. Ct. 1127 at 1130, quoting, *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S. Ct. 681, 686 (1953)

The basis for the Union's decision not to arbitrate the Plaintiff's grievance was grounded in the facts of the case – i.e., Mr. Carreiro's unequivocal violation of published rules – the Local's decades of experience with the Company and with other retailers, and with its observation of the arbitration process. Having observed repeated terminations of employees who violated purchase policies, regardless of the value of the product involved or the longevity or excellence of the employee, and having repeatedly seen such terminations upheld at arbitration, the Union reasonably determined that arbitration would be futile. There is no absolute right of a union employee to have his grievance taken to arbitration. *Vaca*, 386 U.S. at 191, 87 S. Ct. at 917. As expressed by the First Circuit Court of Appeals,

> A union is accorded considerable discretion in dealing with grievance matters, and it may consider the interests of all its members when deciding whether or not to press the claims of an individual employee." *Seymour v. Olin Corp.*, 666 F.2d 202, 208 (Former 5th Cir.1982).

*Ayala v. Union de Tronquistas de Puerto Rico, Local 901*, 74 F.3d 344, 345-346 (1st Cir. 1996). Encompassed in its consideration of all of its members, a union reasonably may opt not to expend resources in time and money on an arbitration it views as futile. Less obviously, a Union may, in the interest of the bargaining unit as a whole, decline to arbitrate a futile grievance in deference both to the integrity of its bargaining

relationship with the Company and to its stake in the Company's financial viability. Thus, in this case, the Union has taken pains to ally with the Company in protecting Company property, when appropriate, as part of its interest in the financial health of an employer of almost 10,000 of its members.

In fact, as the undisputed facts make clear, Union Representatives Matias and Pontarelli advocated vigorously on behalf of the Plaintiff. The undisputed evidence of statements made by the Representatives and by the Plaintiff himself at his three grievance hearings demonstrate conclusively that virtually every conceivable argument that could be made on his behalf was made. Thus, the Company was made aware of Mr. Carreiro's seniority, his excellent employment record, his stated intention to help rather than harm the Company by buying unsellable product, and even that he had seen many, many others engage in the same kind of conduct. Vigorous advocacy, however, does not require ignoring the realities posed by Plaintiff's reducing the price and purchasing out of code product, in the context of the Company's publication and enforcement of its purchase policies, and arbitrators' consistent affirmation of the Company's right to fire employees found to violate those policies. In fact, the Union did obtain for Mr. Carreiro through its advocacy the opportunity to avoid the stigma of termination, which he declined, and the Company's promise not to oppose his application for unemployment. Far from substandard, the Union's representation of Mr. Carreiro was vigorous and persistent and exhausted the parties' grievance procedure. Consistent with Union By-Laws, President Fleming decided against arbitration. Also consistent with Union By-Laws, Mr. Carreiro was afforded the

opportunity to convince the Union Executive Board to reverse President Fleming's determination, but he could not convince the Board to do so.

**B. Plaintiff's Anticipated Reliance On The Language Of The CBA's Grievance Arbitration Provision Does Not Alter The Result Sought By Local 328**

The Plaintiff is expected to advance the argument that the language of the Collective Bargaining Agreement compels the Union to advance his grievance to arbitration. This contention is without merit. The Agreement provides, in pertinent part,

> In the event that the Company and the Union are unable to settle a grievance, then seven (7) days after [the] last discussion between the Company and the representative of the Union the grievance shall be referred to the American Arbitration Association whose decision shall be final and binding on both parties....

Exh. 1 to Boone Aff., Article 29, Section 2. Under the present circumstances, Plaintiff's argument that the phrase "shall be referred" indicates mandatory arbitration fails as a matter of law, practice, and fact. See, e.g., *Mulvihill*, 335 F.3d at 24. In *Mulvihill*, the First Circuit Court of Appeals was faced with contract language that provided a grievance "shall be submitted to arbitration" should the Company's answer be "unsatisfactory" to the Union. Id. The Circuit Court held such language does not operate as a guarantee to employees "that every grievance will be arbitrated," or displace the Union's exercise of its discretion. Id.

Under the parties contract in this matter, the referral to arbitration only occurs "In the event that the Company and the Union are unable to settle a grievance...." Exh. 1 to Boone Aff., Art. 29, Section 2. The Compact Edition of the Oxford English

Dictionary defines "settle" to mean, "to decide, to come to a fixed conclusion upon a question." Compact Edition of the Oxford English Dictionary (Oxford University Press 1971) at v. II:559. In this case, at the third step of the grievance procedure, the Company maintained its position that Mr. Carreiro's conduct warranted termination. The Union, in light of Mr. Carreiro's admissions and its own experience, ultimately determined arbitration would be futile and effectively acquiesced in the termination. The process thus came "to a fixed conclusion." There is nothing in the language of the arbitration provision to suggest the parties intended the word "settle" to mean "compromise."

Second, even were the language deemed ambiguous, which in this context it is not, examination of the past practice of Local 328 and Stop & Shop under the language would reveal the parties' intention that in the context of Article 29, Section 2, the parties intended "settle" to mean, "come to a fixed conclusion" rather than compromise. See, e.g., F. Elkoui and E. Elkouri, *How Arbitration Works* (Fourth Edition, 1985) 455, and cases there cited ("Use of past practice to give meaning to ambiguous contract language is so common that no citation of arbitral authority is necessary"). In more than five decades of their bargaining relationship, there is no evidence the parties ever construed their contract, as Plaintiff here would urge, to require mandatory arbitration absent compromise.

### C. The Plaintiff Cannot Prevail Against Local 328 Because Stop & Shop Had "Proper Cause" Under The Collective Bargaining Agreement To Terminate Mr. Carreiro's Employment.

As noted above, where a plaintiff claims a union breached its duty of fair representation by declining to arbitrate a grievance, the plaintiff cannot prevail if he

cannot prove the employer violated the bargaining agreement. See, e.g., *Teamsters*, 494 U.S. at 564. In this case, the evidence is overwhelming and indisputable that: 1) Mr. Carreiro rewrapped, re-priced, set aside, and purchased out of code meat; 2) the Company maintained and posted an Employee Purchase Policy that forbade re-pricing, setting aside, and purchasing out of code product; and 3) the Company construes and enforces the Purchase Policies strictly – i.e., with suspension and termination – in the face of undeniable evidence of violations of the above policies. Under these circumstances, and in light of the consistency with which arbitrators uphold terminations under these circumstances, Local 328 concurs that the Company did not here violate the parties' Collective Bargaining Agreement. In fact, the Local has taken steps independently to alert members to the serious consequences of Purchase Policy violations, through announcements at meetings and union newspapers. For the above reasons, and those argued by Stop & Shop in its Memorandum In Support Of Its Motion For Summary Judgment, Plaintiff did not and cannot adduce sufficient evidence to convince a reasonable fact finder that he would, or even could, prevail at arbitration. Accordingly, without a meritorious grievance, Plaintiff cannot prevail in his claim against the Union. *Teamsters*, 494 U.S. at 564.

**Conclusion**

For all the reasons set forth herein, Local 328 respectfully requests that this Court enter summary judgment in its favor and dismiss Plaintiff's complaint in its entirety with prejudice.

Respectfully submitted,

UNITED FOOD & COMMERCIAL
WORKERS UNION LOCAL 328,

Defendant,

By its attorneys,

/s/Richard M. Peirce
Richard M. Peirce, No. 0564
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street, 8th Floor
Providence, RI 02903-2808
401-521-7000

/s/Betsy Ehrenberg
Betsy Ehrenberg (Admitted *Pro Hac Vice*)
*Pyle, Rome, Lichten, Ehrenberg*
*& Liss-Riordan, PC*
18 Tremont Street, Suite 500
Boston, MA 02108
617-367-7200
617-367-4820 (fax)

Dated: November 16, 2007

*Certificate of Service*

To:
Dennis J. Tente, Esquire
Coletti & Tente
311 Doric Avenue
Cranston, RI 02910
(By Telecopier and 1st Class Mail, postage pre-paid)

Gordon P. Cleary, Esquire
Vetter & White
20 Washington Place
Providence, RI 02903
(By Electronic Mail)

Michael C. Lehane, Esquire
Thomas W. Colomb, Esquire
Murphy, Hesse, Toomey & Lehane
World Trade Center East
Two Seaport Lane
Boston, MA 02210
(By Electronic Mail)

Richard M. Peirce, No. 0564
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street, 8th Floor
Providence, RI 02903-2808
401-521-7000
(By Electronic Mail)

I hereby certify that on November 16, 2007, I caused the above Memorandum Of Law In Support Of Motion For Summary Judgment to be electronically filed. The Memorandum is available for viewing and downloading from the Court's Electronic Case Filing system. A copy of this Memorandum will be served on the above counsel of record by telecopier and first class mail, postage pre-paid, and by electronic mail, as specified above.

/s/Betsy Ehrenberg
Betsy Ehrenberg