**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| LIONEL P. CARREIRO<br>Plaintiff<br><br>VS.<br><br>THE STOP & SHOP SUPERMARKET COMPANY, LLC and UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 328, by and through their President, DAVID P. FLEMING, and their Secretary/Treasurer, JAMES RILEY<br>Defendants | ) | C.A. NO. 07-158S<br><br>**PLAINTIFF'S, LIONEL P. CARREIRO, OBJECTION TO MOTIONS FOR SUMMARY JUDGMENT BY DEFENDANTS, THE STOP & SHOP SUPERMARKET COMPANY, LLC and UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 328** |

In accordance with FED. R. CIV. P. 56, Plaintiff, LIONEL P. CARREIRO, objects to the Motions of Defendants, THE STOP & SHOP SUPERMARKET COMPANY, LLC (Stop & Shop) and UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 328 (Local 328), for Summary Judgment. As his reasons, Plaintiff states that based upon the pleadings, Affidavits, evidence and related inferences taken in the light most favorable to the Plaintiff, a number of genuine issues of material fact exist in this matter that would affect the outcome of this suit under the governing law.

In support of this Objection, Plaintiff submits the accompanying Statement of Undisputed Facts, Memorandum of Law, Statement of Disputed Facts and Affidavit of LIONEL P. CARREIRO.

Respectfully submitted,
LIONEL P. CARREIRO
By his Attorney,

*Dennis J. Tente*
DENNIS J. TENTE, ESQ. #1949
**COLETTI & TENTE**
311 Doric Ave.
Cranston, RI 02910
941-4050

November 21, 2007

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910
(401) 941-4050
Fax (401) 941-2130

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| LIONEL P. CARREIRO<br>Plaintiff<br><br>VS.<br><br>THE STOP & SHOP SUPERMARKET COMPANY, LLC and UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 328, by and through their President, DAVID P. FLEMING, and their Secretary/Treasurer, JAMES RILEY<br>Defendants | ) | C.A. NO. 07-158S<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S, LIONEL P. CARREIRO, OBJECTION TO MOTIONS FOR SUMMARY JUDGMENT BY DEFENDANTS, STOP & SHOP and LOCAL 328** |

## I.

## SUMMARY JUDGMENT STANDARD

After setting forth the text of Rule 56 of the Federal Rules of Civil Procedure, this Court in Hussey v. Quebecor Printing Providence, Inc., 2 F. Supp. 2d 217 (D. R.I. 1998) indicated the inquiries necessary for ruling on Summary Judgment Motions.

> "Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir.1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id.
>
> On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. Continental Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir.1987). Similarly, "[s]ummary judgment is not

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910
(401) 941-4050
Fax (401) 941-2130

> appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." Gannon v. Narragansett Elec. Co., 777 F.Supp. 167, 169 (D.R.I.1991)."
> Id. at 221, 222

It is the Plaintiff's position that there are disputed material facts in this matter such that a reasonable jury would return a verdict in his favor.

## II.

## FACTUAL BACKGROUND

1. On September 16, 2006, Plaintiff purchased hot dogs which were out-of-code approximately sixteen (16) hours. He reduced the price of the hot dogs to 69 cents per pound and had the Department Meat Wrapper okay the purchase. There was no stealing involved in this transaction since the hot dogs would have been thrown out.

2. Plaintiff was stopped by security and subsequently suspended by Stop & Shop for violating certain written Associate Purchase Policies.

3. After three (3) grievance proceedings which were attended by Management and Union Representatives along with the Plaintiff, Mr. Carreiro was terminated from his employment. At all three (3) meetings, Management Representatives were adamant that the only discipline that would be imposed was termination.

4. Mr. Carreiro argued at all three (3) meetings that the so-called Employee Purchase Policies were violated every day by employees. He further indicated that Meat Department Managers allowed purchases of out-of-code items at reduced prices by employees to reduce "shrink" (total financial loss if out-of-code items are thrown away).

5. Mr. Carreiro further indicated that he thought he was in charge of the Meat Department since he was the only full-time person on duty. He actually thought he did nothing wrong, and thought he was doing the company a favor by purchasing the items. He further indicated that, along with numerous other employees, he had been purchasing out-of-code items for years.

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910

(401) 941-4050
Fax (401) 941-2130

6. Although Mr. Carreiro argued that the purchase policies were disregarded by employees, Department Managers, and even Store Managers, there was absolutely no investigation by Union Representatives into his allegations.

7. Although the Associate Purchase Policy has changed to include discipline that was less severe than termination, Local 328 has never arbitrated an Associate Purchase Policy violation, and it was clear from the beginning of the grievance procedure that there was no intention to arbitrate Mr. Carreiro's grievance.

## III.

## ARGUMENT

**A. When management personnel ignore Associate Purchase Policies, and essentially allow them to be violated on a daily basis, Plaintiff's alleged violation cannot be determined to be just cause, as a matter of law, for his termination under the Collective Bargaining Agreement (CBA).**

The Collective Bargaining Agreement (CBA) provides that an employee can be discharged for "just cause". CBA Article 25 §1 H. 2. Page 24. "Just cause" is a question of law to be determined by the Court.

> "Whether the undisputed facts in a specific case establish--or fail to establish--proper cause for discharge within the contemplation of a given CBA is a question of law (and, thus, a question for the court). Crider, 130 F.333d at 1242. The concept of proper cause demands a close, albeit not exact, correlation between the employee's conduct and the employer's response. Boston Med. Ctr. v. Serv. Employees Int'l Union, 260 F.3d 16, 22 (1st Cir.2001).
>
> In this case, the question of whether proper cause exists to sustain the employee's discharge intersects with the question of whether the record contains substantial evidence. After all, to find substantial evidence supporting the adverse employment action for Title VII purposes but not for purposes of a broadly worded management rights provision in the CBA would frustrate the legislative policies at stake. See id. at 23; see also Williams, 875 F.2d at 1485. It follows, therefore, that if Spalding's actions rested on substantial evidence, then Spalding acted with proper cause within the meaning of the CBA."

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910
(401) 941-4050
Fax (401) 941-2130

Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, at 22 (1st Cir.2003).

Local 328 places great reliance on Mulvihill, supra, arguing that Plaintiff "carries a heavy burden" in this matter. But, Mulvihill can certainly be distinguished from this matter since it involved a sexual harassment claim as "proper cause for termination."

> "This case follows the classic pattern for a hybrid section 301 action. It involves an assessment of the actions of Spaulding and the Union against the background understanding of "proper cause" as that term is used in the CBA. The matter is complicated, however, because the principal allegation against Mulvihill--the charge of sexual harassment--implicates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e to to 200e-17. Employee-claimants in hybrid section 301 actions that impinge upon an employer's responsibilities under Title VII must carry an especially heavy burden. That is so because the presence of Title VII transforms the case from a relatively simple two-variable equation that aspires to strike a suitable balance between an employee's rights and an employer's hegemony into a more complex three-variable analysis in which that balance must be struck while simultaneously ensuring that important federal anti-discrimination policies are honored. See Malik v. Carrier Corp., 202 F.3d 97, 106 (2d Cir.2000)." Mulvihill, supra at 21.

Stop & Shop, in reliance on Hussey v. Quebecor Printing Providence, Inc., 2 F. Supp. 217 (D R.I. 1998), argues this Court as a matter of law should rule that it had "just cause" to terminate Mr. Carreiro. In Hussey, the Plaintiff stole a coupon which allowed a 50% discount off merchandise at Caldor, a Department Store chain. The following facts were found relevant to the Court's decision finding proper cause to terminate Hussey.

1. Caldor was Quebecor's largest client accounting for 52% of its sales. Id. at 219.

2. Plaintiff's wife purchased $416.00 worth of goods for $208.00 giving the stolen coupon an equivalent value of $208.00. Id.

3. Caldor was pressing a claim against Quebecor for $246,000.00 for damages arising out of the coupon thefts. Id. at 220.

In the matter before this Court, there is not a Title VII violation involved, and

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910
(401) 941-4050
Fax (401) 941-2130

the items Mr. Carreiro paid for were allegedly going to be thrown out. The evidence, taken in the light most favorable to the Plaintiff, indicates that Meat Department Managers at various stores approved purchases of slightly out-of-code products to reduce "shrink" (financial losses incurred by throwing out out-of-code meat products).

> "Mike Matias presents the case and states that Lionel feels that that the purchase policy should have been reviewed with him as he has moved up in the company over the years and that if Lionel was aware that reducing the price on the hot dogs and purchasing out of code product was a violation of the policy he would have never jeopardized his job by doing so Mike M states that Lionel felt that he was helping the company by purchasing the hot dogs that were out of code and going to be thrown out and that by purchasing them he was putting money back into the company and helping the company reduce shrink..
> Glenn Hogan states that he understands that Lionel feels that the purchase policy should have been reviewed but there is no statute of limitations on the purchase policy and no policy in place that the purchase policy has to be reviewed with associates at anytime. Glenn states that the company doesn't waiver on the purchase policy and termination is the only option in this matter and there is no option but to follow past practice and move to termination...
>
> Mike and Domenic explain the next steps of the grievance process and that the outcome of the grievance will be termination and Lionel should consider the fact that he will have to try to collect unemployment and that Mike will have conversation with the company and ask that the company not appeal Lionel's unemployment claim. Lionel asks if he can go home and leaves the office.
> Lionel Carreiro 2nd step meeting 10/6/06.

Needless to say, prior to the third step grievance meeting, the Local 328 representatives indicated as stated above, "[t]he outcome of the grievance will be termination and Lionel (Plaintiff) should consider the fact that he will have to try to collect unemployment..." In Mulvihill, supra, the Court stated, (a hybrid section 301) "case may proceed only if, and to the extent that, the claimant can show that the checks and balances built into the CBA's internal dispute resolution process have failed to function." Mulvihill, supra, at 20. In this case, Mr. Carreiro's termination was predetermined and the internal dispute process was a sham.

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910
(401) 941-4050
Fax (401) 941-2130

**B. Local 328, based upon an alliance with management representatives of Stop & Shop, failed to conduct even a rudimentary investigation of Plaintiff's allegations such that its processing of plaintiff's grievance was perfunctory, arbitrary and in breach of the Collective Bargaining Agreement (CBA).**

In Hines v. Anchor Motor Freight, Inc., 424 US 554, 47 L Ed 2d 231, 96 S Ct 1048 (1976) our Supreme Court cited to Vaca v. Sipes, 386 US 171, 17 L Ed 2d 842 87 S Ct 903 (1967) discussing a union's decision not to proceed to the last step of a contractual grievance process.

> "In Vaca "we accept[ed] the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion," 386 US, at 191, 17 L Ed 2d 842, 87 S Ct 903, and our ruling that the union had not breached its duty of fair representation in not pressing the employee's case to the last step of the grievance process stemmed from our evaluation of the manner in which the union had handled the grievance in its earlier stages. Although "the Union might well have breached its duty had it ignored [the employee's] complaint or had it processed the grievance in a perfunctory manner," "the Union conclude[d] both that arbitration would be fruitless and that the grievance should be dismissed" only after it had "processed the grievance into the fourth step, attempted to gather sufficient evidence to prove [the employee's] case, attempted to secure for [him] less vigorous work at the plant, and joined in the employer's efforts to have [him] rehabilitated." Id., at 194, 17 L Ed 2d 842, 87 S Ct 903." Hines 424 US at 458-459.

The Union Representatives for Local 328 in Mr. Carreiro's case appeared at the grievance meetings and essentially repeated what Mr. Carreiro said. Not one of the Affidavits in this case indicate that Local 328 conducted any investigation whatsoever. A reasonable investigation would have covered:

1. Interviews of Meat Department Managers on purchases of out-of-code products.

2. Interviews of employees on purchases of out-of-code products.

3. Requests for Stop & Shop policies on persons-in-charge in the absence of Department Managers.

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910
(401) 941-4050
Fax (401) 941-2130

4. Numerous other areas regarding deviations from Associate Purchase Policies.

In Vaca, supra, both the employer and union seemed to make every effort to both prove the employee's case and also have him rehabilitated. In this case, Stop & Shop exhibited what could only be termed as a cavalier attitude, and Local 328 acquiesced throughout the entire grievance process. In its Memorandum of Law, Local 328 cites to Sarnelli v. Amalgamated Meat Cutters and Butcher Workmen of North America, Local #33 and Stop & Shop, Inc., 333 F. Supp 228 (D. Mass 1971) aff'd 457 F. 2d 807 (1st Cir 1972) (Sarnelli II). Sarnelli was terminated for participation in an attempt to steal a box of meat. Union Representatives interviewed two (2) employees who accused Sarnelli, and a Shop Steward who attested to the credibility of the two (2) witnesses. Sarnelli had also been accused of dishonesty on two (2) prior occasions during his employment; for one of which he was suspended for three (3) days for underpricing meat on a particular sale. The Court ruled:

> "In sum, the question before this court is not whether in fact Sarnelli stole property of the Stop & Shop, but whether the representatives of Local #33 conducted a reasonable investigation in his behalf to determine whether or not to process his case to arbitration pursuant to the grievance procedures set out in the collective bargaining agreement between Stop & Shop and Local #33. A secondary issue involved herein is whether or not Stop & Shop had legally sufficient grounds to terminate Sarnelli's employment. I rule that on the evidence presented to this Court, the representatives of Local #33 made an adequate investigation of the incident of July 20, 1970, that they acted reasonably in believing that the affiants, Van Mourik and Asselin, were telling the truth, and they acted reasonably in believing that the matter could not be successfully arbitrated in the interests of Sarnelli. I further rule that neither the Union nor Stop & Shop management breached any obligation owing to Sarnelli."
> Id. at 221.

In the Sarnelli case there was a reasonable investigation. In Lionel Carreiro's case, there was absolutely no investigation.

In Hines, supra, our Supreme Court finding in favor of the Plaintiff indicated:

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910

(401) 941-4050
Fax (401) 941-2130

> "Except for this case the Courts of Appeals have arrived at similar conclusions. As the Court of Appeals for the Ninth Circuit put it in Margetta v Pam Pam Corp. 501 F2d 179, 180 (1974): "To us, it makes little difference whether the union subverts the arbitration process by refusing to proceed as in Vaca or follows the arbitration trail to the end, but in so doing subverts the arbitration process by failing to fairly represent the employee. In neither case, does the employee receive fair representation."
> Hines, supra, at 571, 572.

## IV.

## CONCLUSION

There is absolutely no evidence that Local 328 ever conducted any investigation of Plaintiff's allegations of wholesale violations of the Associate Purchase Policies of Stop & Shop by employees, and management personnel. Lack of an appropriate investigation supports arbitrary Union conduct necessary to sustain a §301 action.

> "After reviewing the allegations and the record before it, the Court of Appeals concluded that there were sufficient facts from which bad faith or arbitrary conduct on the part of the local Union could be inferred by the trier of fact and that petitioners should have been afforded an opportunity to prove their charges"...
> Hines v. Anchor Motor Freight, Inc., 424 US, 554 at 559.
>
> As summarized by the Court of Appeals, the allegations relied on were:
> "They consist of the motel clerk's admission, made a year after the discharge was upheld in arbitration, that he, not plaintiffs, pocketed the money; the claim of the union's failure to investigate the motel clerk's original story implicating plaintiffs despite their requests; the account of the union officials' assurances to plaintiffs that 'they had nothing to worry about' and 'that there was no need for them to investigate.'"
> Id. footnote 4.

Further, Mr. Carreiro has under oath indicated that numerous Meat Department Managers not only knew, but also approved of employee purchases of out-of-code meat products. Taken in the light most favorable to the Plaintiff, the evidence presented cannot support summary judgment being granted to either Stop & Shop or Local 328.

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910
(401) 941-4050
Fax (401) 941-2130

Plaintiff would request that the respective Motions for Summary Judgment by Defendants, Local 328 and Stop & Shop, be denied.

Respectfully submitted,
LIONEL P. CARREIRO
By his Attorney,

*Dennis J. Tente*
DENNIS J. TENTE, ESQ. #1949
**COLETTI & TENTE**
311 Doric Ave.
Cranston, RI 02910
941-4050
941-2130 (FAX)

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910
(401) 941-4050
Fax (401) 941-2130

**CERTIFICATION**

I hereby certify that true copies of the within Plaintiff's Objection to Motions for Summary Judgment by Defendants were mailed to Betsy Ehrenberg, Esq., **PYLE, ROME, LICHTEN, EHRENBERG & LISS-RIORDAN, P.C.**, 18 Tremont St., Suite 500, Boston, MA 02108, Richard M. Peirce, Esq., **ROBERTS, CARROLL, FELDSTEIN & PEIRCE, INC.**, 10 Weybosset St., 8th Fl., Providence, RI 02903-2808, Gordon P. Cleary, Esq., **VETTER & WHITE**, 20 Washington Pl., Providence, RI 02903, Michael C. Lehane, Esq. and Thomas W. Colomb, Esq., **MURPHY, HESSE, TOOMEY & LEHANE, LLP**, 300 Crown Colony Dr., Suite 410, P. O. Box 9126, Quincy, MA 02269-9126, by regular mail, postage prepaid, this 27th day of November, 2007.

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910
(401) 941-4050
Fax (401) 941-2130