**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| LIONEL P. CARREIRO<br>Plaintiff<br><br>VS.<br><br>THE STOP & SHOP SUPERMARKET COMPANY, LLC and UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 328, by and through their President, DAVID P. FLEMING, and their Secretary/Treasurer, JAMES RILEY<br>Defendants | ) | C.A. NO. 07-158S<br><br>**AFFIDAVIT** |

I, LIONEL P. CARREIRO, upon oath, depose and aver that:

1. Prior to my dismissal from THE STOP & SHOP SUPERMARKET COMPANY, LLC, hereinafter referred to as Stop & Shop, in October, 2006, I had been an employee in good standing since June, 1987.

2. It had been my understanding for years that if the Meat Department Manager and head meat cutter were not on duty, the full-time employee on duty would function as the Meat Department Manager.

3. Attached hereto and identified as Exhibit 1 to this Affidavit is the Associate Purchase Policy in effect at the present time. Paragraph 16 states:

> "Special orders or other meat and produce items which are not purchased from the case should be wrapped as regular items, sealed, price marked and initialed by the appropriate Department Head or the person in charge of the department."

4. I would reiterate that I was the person in charge of the Meat Department on September 13, 2006 and for quality control purposes, the perishable manager on that date since the Meat Department Manager and head cutter were not on duty.

5. Exhibit 2 herein is a copy of the Employee Purchase Policy I signed on June 2, 1987, and Exhibit 3 is a copy I signed, but is undated. Both Exhibits 2 and 3 indicate

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910
(401) 941-4050
Fax (401) 941-2130

that "Failure to follow or comply with the Employee Purchase Policy will result in dismissal."

6. There clearly had been a change in policy at Stop & Shop, since the present Associate Purchase Policy (Exhibit 1) states: "Failure to follow the Associate Purchase Policy may result in disciplinary action, up to and including termination of employment."

7. Exhibits 4, 5 and 6 attached hereto are notes of three (3) grievance meetings provided by the Defendant, UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 328, hereinafter referred to as Local 328; the first meeting occurring on September 18, 2006, the second on October 6, 2006 and the third on October 16, 2006. Of particular note during the first meeting on September 18, 2006, is the sentence "Lionel also purchased chicken that was reduced to 49 cents per pound; the chicken was authorized for reduction by part time cutter Dave Beach and was placed in the sales case for sale to the public." As indicated, apparently there was some authority for a part-time meat cutter to reduce the price of a product, and it is my understanding that Mr. Beach was never disciplined for that activity.

8. My Union Representatives, based upon the present Associate Purchase Policy indicated in Exhibit 1, could certainly have argued that my alleged violation warranted anything from a warning to a short suspension. As indicated in Exhibits 4 through 6, at the grievance meetings, my representatives basically acquiesced to the fact that I would be terminated.

9. During my nineteen (19) years at Stop & Shop, I have probably worked at over twenty (20) locations. Personnel in the Meat Department worked as a team in all locations and on numerous occasions, slightly out-of-code items were re-coded for a day or two with the approval of the Meat Department Manager.

10. Also, on numerous occasions, Meat Department employees would re-wrap

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910

(401) 941-4050
Fax (401) 941-2130

and re-price slightly out-of-code items and personally purchase them. This was done with the knowledge and approval of Meat Department Managers in order to reduce shrink. (Obtaining money for slightly out-of-code items rather than throwing them away and taking a total loss.)

11. Items like bacon and hot dogs which were either salted, cooked, or both, but were slightly out-of-code would almost always be re-coded and sold to both the public and Stop & Shop employees with the approval of the Meat Department Manager.

12. In the past, I had been contacted by Store Managers during the work day and told to cut certain portions of meat for them. I was told to cut the portions and hold them for later purchase by the Store Manager; clearly in violation of Paragraph 10 of the Associate Purchase Policy. Further, on numerous occasions, slightly out-of-code items would be sent to the Rhode Island Food Bank.

13. During the three (3) grievance meetings in this matter, I pointed out to my Union Representatives that the Associate Purchase Policies were violated in just about every Stop & Shop Store on a daily basis.

14. My Union Representatives never spoke to me privately, nor did they make any effort to investigate my allegations or any aspect of this matter in any way. From the day I was suspended from Stop & Shop, my Union Representatives merely cooperated with Stop & Shop management to expedite my termination.

15. I also purchased the three (3) packages of hot dogs in the same manner as numerous Meat Department employees had purchased various out-of-code items in the past. For a nineteen (19) year employee in good standing, my purchase did not constitute good cause to terminate me from my employment.

16. Had the Defendant Union investigated this matter and requested arbitration, as the Collective Bargaining Agreement required, I believe my punishment would have

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910
(401) 941-4050
Fax (401) 941-2130

been much less severe than termination. Further, under Section 2 of Article 29 of the Collective Bargaining Agreement, after a demand for arbitration has been filed, the parties may engage in voluntary grievance mediation.

17. Although Stop & Shop and Local 328 have indicated that Arbitrators have ruled in favor of Stop & Shop in these matters, in Paragraph 17 of his Affidavit, Local 328 President, David Fleming, indicated: "To the best of my recollection and belief, our Local has not arbitrated a single grievance of any employee terminated for violating one of the above-mentioned policies where, after investigating the facts and circumstances at issue, the Union Representatives and Officers determined conclusively that the employee committed such a Purchase Policy violation and it was that violation upon which the termination was based."

18. I would again indicate that no Representative of Local 328 ever met with me privately, nor did any Representative of Local 328 ever thoroughly investigate the facts and circumstances at issue. With regard to this matter, I was not only not provided with fair representation, I was provided with virtually no representation with regard to an appropriate investigation and appropriate representation at the grievance meetings.

19. Further, attached hereto and identified as Exhibit 7 to this Affidavit is a letter which I forwarded to my Attorney with regard to a letter he received from the Attorney representing Local 328. Within this letter is indicated the following:

a) Meat products are pulled off the floor at all times, placed in the department cooler and held for customers, employees and management.

b) At no time in my nineteen (19) year tenure at Stop & Shop has a Meat Manager or head cutter ever had a Store Manager involved with purchases in the Meat Department.

c) If there was not a Meat Manager or head cutter on site, the full-time Meat Cutter on duty would assume supervisory responsibilities for the Meat Department.

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910
(401) 941-4050
Fax (401) 941-2130

d) Out-of-code items were re-coded on a regular basis in order to avoid financial loss.

e) There are numerous procedures on the Employee Purchase Agreements which are not followed, were never implemented, and nor did I know that they ever existed.

20. I would like to make clear that this is not a case of me stealing anything from Stop & Shop. This is a case where I paid for three (3) pounds of hot dogs which were approximately sixteen (16) hours out-of-code and allegedly should have been thrown out according to Stop & Shop. I certainly could have re-coded the items for 1 or 2 days, reduced the purchase price and placed them out for sale to the public. Had I done that and purchased them from the open case, there would have been absolutely no violation.

Lionel P. Carreiro
LIONEL P. CARREIRO

Subscribed and sworn to before me at Cranston, Rhode Island, this 26th day of November, 2007.

Dennis J. Tente
NOTARY PUBLIC
Notary Public

Law Offices
COLETTI & TENTE
311 Doric Avenue
Cranston, RI 02910
(401) 941-4050
Fax (401) 941-2130