UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LIONEL P. CARREIRO

v. C.A. No. 07-158-ML

THE STOP & SHOP SUPERMARKET COMPANY, LLC, and UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL 328, by and through their President, DAVID P. FLEMMING and their Secretary/Treasurer, JAMES RILEY

**Memorandum and Order**

This matter is before the Court on the motions for summary judgment filed by Defendants, The Stop & Shop Supermarket Company, LLC ("Stop & Shop") and United Food & Commercial Workers Union Local 328 ("Local 328" or "Union"). For the reasons set forth below, Stop & Shop's and Local 328's motions for summary judgment are granted.

I. Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[1] An issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." National

[1]Fed R. Civ. P. 56 was amended on December 1, 2007. The motions for summary judgment were filed in October and November 2007. Plaintiff responded to the motions in November 2007. The Court employs the language of the rule that was in effect at the time the motions for summary judgment were filed.

Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Casualty Co. v. Canadian Universal Insurance Co., 924 F.2d 370 (1st Cir. 1991).

## II. Facts

Plaintiff, Lionel P. Carreiro ("Carreiro") was employed by Stop & Shop from 1987 until 2006. During the course of his employment, Carreiro worked at several Stop & Shop supermarket locations. His last assignment was in the Stop & Shop store located on Mendon Road in Cumberland, Rhode Island. At all times relevant to this action, Local 328 was the collective bargaining agent of a bargaining unit comprised of certain employees of Stop & Shop, including Carreiro.

On September 13, 2006, after his shift in the meat department at the Mendon Road location had ended, Carreiro purchased some chicken and hot dogs. Upon inspection of the purchase, Robert Di Sano ("Di Sano"), an asset protection detective employed by Stop & Shop, discovered that Carreiro had purchased three packages of hot dogs with an expiration date of September 12, 2006. The hot dogs had been rewrapped into one package and relabeled at a discounted price. Carreiro admitted to Di Sano that he had personally rewrapped and repriced the out-of-date hot dogs.

The Stop & Shop employee purchase policy was posted at the employee time clock at the

Cumberland location. The policy provided, among other things, that "[r]educed merchandise is only to be purchased after it is put on display for the general public[,]" "[u]nsaleable merchandise, including broken packages and out-of-code product, is not to be taken, used or eaten[,]" and "[a]ssociates are not permitted to wait on themselves . . . ." Joel Boone ("Boone") Affidavit, Ex. 3. The policy further provided that "FAILURE TO FOLLOW THE ASSOCIATE PURCHASE POLICY MAY RESULT IN DISCIPLINARY ACTION, UP TO AND INCLUDING TERMINATION OF EMPLOYMENT." Id. (capitals in original). Carreiro's personnel file contained two prior versions of the employee purchase policy which were signed by Carreiro and in which he acknowledged that he understood the policy.[2] The employee purchase policy applies to all Stop & Shop employees, including those in bargaining units, non-bargaining unit supervisors and managers and security personnel. Where a provable violation of the employee purchase policy occurs, Stop & Shop has a consistent disciplinary response of termination of employment.

Carreiro was suspended by Stop & Shop, pending termination, on September 13, 2006, for violating the employee purchase policy. The collective bargaining agreement ("CBA") between Local 328 and Stop & Shop provided that an "employee shall be terminated in the event" that the employee is "discharged for just cause." Stop & Shop Statement of Undisputed Facts at ¶ 14. The CBA provided for a three-step employee grievance procedure.

On or about September 13, Carreiro contacted Mike Matias ("Matias"), a Union

---

[2]Carreiro notes that the previous policies contained in his personnel file stated that failure to follow the policy will (not may) result in dismissal. In light of Stop & Shop's consistent response to violations of the policy, the Court concludes that this difference in the versions of the policy is not significant, as Stop & Shop acted in accord with the policy.

representative, and informed him that he had been suspended for purchasing chicken at a reduced price, shortly before the sell-by code expired, after the chicken had been displayed for sale to the general public. The day after Carreiro contacted Matias, Matias went to the Cumberland store to investigate the matter and spoke to Steven Turchetta ("Turchetta"), the Cumberland store manager, and the store loss prevention detective. Turchetta informed Matias that Carreiro had been suspended pending termination for violating Stop & Shop's employee purchase policy by (1) reducing the price on the hot dogs without authorization; (2) purchasing reduced price product before it had been offered to the public; (3) holding the product in the back of the store for himself, and (4) purchasing out-of-code product.

Carreiro, Matias and Turchetta met for the first step grievance meeting. At the meeting, Carreiro argued that individuals had been violating the employee purchase policy, without consequence, for years. Matias argued that Carreiro was a long-term employee with a good record and did not deserve to be terminated for doing something he had done before without penalty. The meeting ended with Stop & Shop maintaining its position that Carreiro would be terminated.

Before the second step grievance meeting, Matias met with another representative from Local 328, Dominic Pontarelli ("Pontarelli"), to discuss the grievance. Pontarelli had been servicing the Stop & Shop contract for ten years. The second step grievance meeting was held on October 6, 2006. Carreiro, Matias, Pontarelli, Turchetta and Glenn Hogan ("Hogan"), another representative of Stop & Shop, attended the meeting. At the meeting Carreiro admitted to rewrapping the hot dogs and reducing the price for his own purchase. Hogan explained Stop & Shop's consistent practice of terminating employees who violate the employee purchase policy.

Once again, the meeting ended with Stop & Shop confirming its position that Carreiro would be terminated.

The third step grievance meeting was held on October 16, 2006. At this meeting, another representative from Stop and Shop, Bill Dickey ("Dickey"), joined Carreiro, Matias, Turchetta Pontarelli and Hogan.[3] Dickey explained that Carreiro's rewrapping and relabeling the out-of-code hot dogs at a lower retail price for his own benefit was a violation of the employee purchase policy. Dickey also reiterated Stop & Shop's zero-tolerance policy for violations of the policy. Dickey explained that Stop & Shop never knowingly sells out-of-code product and that any employee identified by Stop & Shop as selling or buying out-of-code product would be immediately suspended pending termination because of the potentially dangerous health consequences. Local 328 representatives informed Carreiro that Stop & Shop had a consistent practice of termination of employment for a violation of the employee purchase policy. Dickey concluded that Carreiro's violations of the employee purchase policy were clear and that Carreiro would be terminated. Local 328 representatives informed Carreiro that they believed Stop & Shop's position on termination would be upheld.

After the third step meeting, Matias and Pontarelli informed Carreiro that they would present the matter to the president of Local 328 to determine whether the matter would be submitted to arbitration.[4] Matias and Pontarelli also informed Carreiro that they were not aware of any instance when Local 328 arbitrated a grievance "in this kind of case." Local 328

---

[3]The record reflects that Stop & Shop and Local 328 do not agree on all of the attendees at the three grievance meetings. Plaintiff does not specifically dispute either party's assertions and the Court determines that the disagreement is immaterial.

[4]According to the by-laws of the Union, the president of the Union, or a duly assigned representative, determines whether a matter is submitted to arbitration.

Statement of Undisputed Facts at ¶ 38.

The president of Local 328, David Flemming ("Flemming"), discussed the Carreiro matter with Matias and Pontarelli several times during the grievance process.[5] Based upon the information reported to him, including Carreiro's admission to rewrapping and repricing out-of-code product, Flemming concluded that Local 328 would not win an arbitration challenging Stop & Shop's termination of Carreiro. It was Flemming's experience that on every occasion that Stop & Shop learned of a provable violation of the employee purchase policy as a result of an employee (1) not paying full price for merchandise; (2) purchasing or taking out-of-code product; or (3) serving him or herself, Stop & Shop terminated the employee.[6] Additionally, based on the experience of the officers and representatives of Local 328, and the consistent advice of Local 328 staff and legal counsel over the years, Flemming was aware that arbitrators, virtually without exception, uphold terminations of employment based on violations of employee purchase policies. Local 328 had never arbitrated a single grievance, where, after investigating the facts and circumstances surrounding the matter, Local 328 determined conclusively that the employee violated the employee purchase policy and the termination of employment was based on the

[5]In support of its motion, Local 328 submitted the affidavit of Flemming. Flemming has been a member of Local 328, and its predecessor locals, since 1961. Local 328 represents approximately 11,500 employees in various employment settings. Approximately 9,800 of those employees work for Stop & Shop. Flemming has served as a paid Union representative for 11 years and has been a member of the executive board of the Union since 1983. He has served as a Union vice president, executive assistant to the president, and since 2004, has been president of the Union. His duties as president include, but are not limited to, maintaining the business records of Local 328, maintaining a familiarity with collective bargaining agreements with employers, oversight of the filing of grievances, and determining whether or not unresolved grievance should be submitted to arbitration.

[6]In addition to Flemming's affidavit submitted by the Union, Stop & Shop submitted the affidavit of Joel Boone, a vice president of labor relations for Stop & Shop. Boone has worked for Stop & Shop since 1985 in a management capacity in labor relations. Boone is responsible for the administration of collective bargaining agreements and grievance procedures which govern Stop & Shop employees in New England. Boone averred that when a "provable violation" of the employee purchase policy occurs, Stop & Shop's "unvarying disciplinary response" is to terminate employment. Boone Affidavit at ¶ 9.

violation of the policy. Flemming instructed Matias to inform Carreiro that Local 328 would not arbitrate the matter and to inform Carreiro of his right to appeal Flemming's decision to the executive board of Local 328.

On October 23, 2006, Matias received a voice mail message from Carreiro informing him that Carreiro wanted the matter submitted to arbitration. Matias contacted Carreiro the same day and informed him that the matter had been discussed with Flemming and the executive officers of Local 328 and it was decided that the matter would not be submitted to arbitration. Matias informed Carreiro that he could appeal that decision to the executive board of Local 328.

Carreiro submitted a letter to Local 328, dated October 23, 2006, requesting to meet with the executive board. Carreiro attended the executive board meeting on November 6, 2006. Carreiro addressed the executive board and explained why he believed Local 328 should submit the matter to arbitration. Carreiro argued that (1) he was a long-standing employee with a good record; (2) that Stop & Shop failed to review the employee purchase policy with him over the years; (3) that he thought he was doing the company a favor by purchasing product that Stop & Shop could not sell; and, (4) that employees bought out-of-code product "all the time." Local 328 Statement of Undisputed Facts at ¶ 46. Carreiro further argued that he had always done what Stop & Shop had asked of him over his career and emphasized that "many people engaged in the behavior for which he was terminated." Id.

During the meeting, executive board members commented that Carreiro "must have known about" Stop & Shop's "strict enforcement" of the employee purchase policy since he had worked for Stop & Shop for nineteen years. Id. at ¶ 47. At the meeting Carreiro was asked why he would jeopardize his job and benefits "by doing what he admitted he did." Id. Carreiro

replied that "everybody does it." Id. In response, an executive board member remarked that "as is true of speeding, not getting caught does not make something legal, and the fact that [Carreiro] or others have gotten away with purchase policy violations in the past did not change that on this occasion he violated the polic[y], and was caught." Id.

The executive board reviewed the facts surrounding Carreiro's termination and Carreiro's presentation. Executive board members acknowledged that Carreiro "obviously knew what he was doing. . . ." Id. at ¶ 48. The executive board voted unanimously not to submit the grievance to arbitration.[7] On November 16, 2006, Flemming sent Carreiro a letter informing him of the executive board's decision not to submit the matter to arbitration. Subsequently, Carreiro filed suit alleging that Stop & Shop discharged him without just cause in breach of the CBA and that Local 328 breached its duty of fair representation in the processing of the grievance.[8]

III. Analysis

Carreiro's suit is known as a "hybrid" claim. See generally Hazard v. Southern Union Co., 275 F. Supp. 2d 214 (D.R.I. 2003); 29 U.S.C. § 185. In order to be successful on his claim, Carreiro must prove that (1) Stop & Shop breached the CBA, and that (2) Local 328 breached its duty of fair representation. Hazard, 275 F. Supp. 2d at 225. Carreiro must establish both prongs or his claim fails. Laurin v. Providence Hospital, 150 F.3d 52 (1st Cir. 1998). Carreiro carries a heavy burden. Mulvihill v. Top-Flite Golf Co., 335 F.3d 15 (1st Cir. 2003).

[7] Flemming averred that he had participated in several executive board appeals of Union members wherein the Union had declined to arbitrate a grievance. Flemming stated that where the executive board was convinced the employee violated the employee purchase policy, or the employee admitted violating the policy, the executive board, routinely, declined to arbitrate the grievance.

[8] The matter was originally filed in Rhode Island Superior Court and was removed to this Court.

A. Did Stop & Shop Breach the CBA?

Plaintiff contends that his "alleged violation" of the employee purchase policy is not just cause for his termination. Plaintiff's Memorandum in Support of Objection to Motions for Summary Judgment at 3. Stop & Shop argues that it did not breach the CBA when it terminated Carreiro's employment.

The CBA provides that an "employee shall be terminated in the event" that the employee is "discharged for just cause." Stop & Shop Statement of Undisputed Facts at ¶ 14. Whether the undisputed facts establish proper cause for discharge is a question of law. Mulvihill, 335 F.3d at 22. "The concept of proper cause demands a close, albeit not exact, correlation between the employee's conduct and the employer's response." Id. Although Carreiro attempts to dispute several of the factors involved in his purchase of the hot dogs, it is undisputed that Carreiro purchased out-of-code hot dogs which he discounted for his own benefit. Those actions are clear violations of the employee purchase policy. The employee purchase policy provides that "out-of-code product[] is not to be taken, used or eaten" and that "[a]ssociates are not permitted to wait on themselves . . . ." Boone Affidavit at Ex. 3. Consequently, the undisputed facts support the conclusion that Carreiro's actions violated at least two separate sections of the employee purchase policy. The employee purchase policy specifically provides that failure to follow the policy "may result in disciplinary action, up to and including termination of employment." Id. (capitals omitted). The record reflects that Stop & Shop has a consistent practice of terminating employees in situations where a provable violation of the employee purchase policy occurs. Carreiro's "actions clearly provided [Stop & Shop] with just cause to terminate his employment

and he was punished in accordance with" Stop & Shop policy noting that his behavior was grounds for termination. Hussey v. Quebecor Printing Providence Inc., 2 F. Supp. 2d 217, 223 (D.R.I. 1998) (employer acted with just cause in terminating an employee for taking client property in violation of company policy); see also Sarnelli v. Amalgamated Meat Cutters & Butcher Workmen of North America, 333 F. Supp. 228 (D. Mass. 1971), aff'd, 457 F.2d 807 (1st Cir. 1972) (Stop & Shop terminated employee for stealing product and did not breach any obligation it owed to employee under a collective bargaining agreement or under plaintiff's contract of employment with Stop & Shop).

Carreiro attempts to create a triable issue by relying on vague generalities and innuendo. In his memorandum in opposition to the motions for summary judgment, Carreiro argues that there is a genuine issue of material fact that precludes this Court from granting summary judgment to Stop & Shop on the just cause issue – his assertion that other "[m]eat [d]epartment [m]anagers at various stores approved purchases of slightly out-of-code products. . . ." Plaintiff's Memorandum in Support of Objection to Motions for Summary Judgment at 5. Although it is not clear, the Court presumes that Carreiro points to his affidavit to support this assertion. In his affidavit, however, Carreiro fails to identify these "other" meat department managers, or where or when the alleged incidents occurred. In the affidavit Carreiro also asserts that on "numerous occasions" Stop & Shop employees would rewrap and reprice out-of-code items and personally purchase the items. Carreiro Affidavit at ¶ 10. Again, Carreiro fails to identify these employees or managers, or where or when the incidents occurred. "[S]pecifics [such as] . . . names, dates, places, and the like . . . are . . . conspicuously absent"

from the affidavit. Perez v. Volvo Car Corporation, 247 F.3d 303, 317 (1st Cir. 2001). Carreiro has failed to identify specific facts to show that there is a genuine issue for trial. See generally Fed. R. Civ. P. 56(e). "The affidavit, in addition to presenting admissible evidence, must be sufficiently specific to support the affiant's position." Perez, 247 F.3d at 316 (internal quotation marks and citation omitted) "[G]auzy generalities are not eligible for inclusion in the summary judgment calculus." Id. at 317.

> Affidavits purporting to describe meetings or conversations need not spell out every detail, but to receive weight at the summary judgment stage they must meet certain rudiments. Statements predicated upon undefined discussions with unnamed persons at unspecified times are simply too amorphous to satisfy the requirements of Rule 56(e), even when proffered in affidavit form by one who claims to have been a participant.

Id. at 316. Carreiro's assertions which purportedly support his claim that other employees were violating the Stop & Shop policy do not meet the requirements of Fed. R. Civ. P. 56(e), and as such, will not be considered by the Court.[9]

---

[9]Stop & Shop has filed a motion to strike certain portions of Carreiro's affidavit. That motion is granted in part and denied in part. For the reasons noted above, the second sentence of paragraph 9, the first sentence of paragraph 15, and paragraphs 10, 11, 12 and 19 are stricken. These assertions are simply not sufficiently specific to support Carreiro's position. See generally Perez, 247 F.3d 303. To the extent the statements in paragraph 19 "rely" on exhibit 7, exhibit 7 is stricken. The second sentence of paragraph 15 and paragraph 20, in its entirely, are stricken because they are legal conclusions. See generally Northern Light Technology, Inc. v. Northern Lights Club, 97 F. Supp. 2d 96, 109 n.14 (D. Mass. 2000), aff'd, 236 F.3d 57 (1st Cir. 2001). The Court does not strike paragraphs 2 and 4 of the affidavit. Stop & Shop also requests that the Court strike any and all paragraphs of Carreiro's statement of disputed facts relying upon the portions of the affidavit that have been stricken. The Court notes some difficulty in ruling on this part of the motion as several of Carreiro's disputed fact statements do not specifically refer to any record evidence supporting the statement. In light of this, however, it is clear that disputed fact statements 2 and 6, with respect to Stop & Shop's statement of undisputed facts, are based on the stricken portions of Carreiro's affidavit and thus are likewise stricken. The Court also strikes disputed fact statements 1 and 8, with respect to the Union's statement of undisputed facts, as relying on stricken portions of Carreiro's affidavit. The Court need not further consider the remainder of Carreiro's affidavit or statement of disputed facts as many of the assertions and or fact statements are simply not properly supported or are not material to the Court's summary judgment analysis. See generally Fed. R. Civ. P. 56(e) (adverse party may not rest upon mere allegations or denials but "must set forth specific facts showing that there is a genuine issue for trail").

Even if the Court were to credit his vague assertions, Carreiro misses the mark. Stop & Shop's consistent policy of termination of employment for violations of the employee purchase policy were for provable violations, i.e. those violations that were specifically brought to the attention of Stop & Shop. Whether or not other employees violated the employee purchase policy, but were not identified by Stop & Shop as violating the policy, is irrelevant to the question of whether Carreiro was appropriately disciplined pursuant to Stop & Shop's policy. Stop & Shop's consistent practice of terminating employees who violate the policy is not rendered inconsistent because Stop & Shop did not terminate an employee it did not know violated the policy. Stop & Shop had just cause to terminate Carreiro's employment; thus Stop & Shop did not breach the CBA.

B. Did Local 328 Breach the Duty of Fair Representation?[10]

Carreiro argues that Local 328 acted in a perfunctory and arbitrary manner in processing his grievance. Carreiro alleges that Local 328 failed to conduct even a rudimentary investigation into his grievance. Local 328 argues that it did not violate its duty of fair representation of Carreiro when it declined to arbitrate the grievance.

A union violates the duty of fair representation when its "conduct toward a member . . . is arbitrary, discriminatory, or in bad faith." Hussey, 2 F. Supp. 2d at 224; see generally Goulet v. New Penn Motor Express, Inc., 512 F.3d 34 (1st Cir. 2008). "A union may not arbitrarily ignore

[10]Based upon the Court's conclusion that Stop & Shop had just cause to terminate Carreiro's employment and thus did not breach the CBA, the Court need not proceed to the second prong of the hybrid claim analysis. See generally Laurin, 150 F.3d 52. However, in the interest of judicial economy and because Stop & Shop and the Union argue both prongs, the Court proceeds to the question of whether the Union breached its duty of fair representation.

a meritorious grievance or process it in a perfunctory fashion." Goulet, 512 F.3d at 45.

> In the context of employee grievances, the duty of fair representation is not a straightjacket which forces unions to pursue grievance remedies under the collective bargaining agreement in every case where an employee has a complaint against the company . . . . A union is accorded considerable discretion in dealing with grievance matters, and it may consider the interests of all its members when deciding whether or not to press the claims of an individual employee.

Ayala v. Union De Tronquistas De Puerto Rico, 74 F.3d 344, 345-46 (1st Cir. 1996) (internal quotation marks and citation omitted).

A union member does not have an absolute right to have his or her grievance taken to arbitration. Hussey, 2 F. Supp. 2d at 224. "A union is under no duty to arbitrate a grievance that it honestly and in good faith believes lacks merit." Chaparro-Febus v. International Longshoremen Association, 983 F.2d 325, 331 (1st Cir. 1993). A union acts arbitrarily "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." Hussey, 2 F. Supp. 2d at 224 (internal quotation marks and citations omitted). This standard requires this Court to objectively examine the competence of the Union's representation while according the Union's conduct substantial deference. Emmanuel v. International Brotherhood of Teamsters, 426 F.3d 416 (1st Cir. 2005).

Taking the facts in the light most favorable to Carreiro, he falls short of showing that the Union violated its duty of representation by acting in an arbitrary fashion. First, and most striking, Carreiro ignores the fact that he readily admits to behavior that violated the employee purchase policy. Carreiro admits that he "purchased hot dogs which were out-of-code" and that

he reduced the price on the hot dogs. Plaintiff's Memorandum of Law In Support of Objection to Motions for Summary Judgment at 2. His admitted misconduct thus subjected him to termination of employment. Carreiro cannot now plead ignorance and gloss over the seriousness of his offense and the resulting situation the Union faced.

Nevertheless, the record reflects that the Union did advocate in support of Carreiro, even in light of the seriousness of his infraction. Before instituting the grievance process, Matias investigated the matter and spoke to Carreiro, Turchetta and a Stop & Shop store detective. During the grievance process, representatives of the Union reminded Stop & Shop of Carreiro's long history and good employment record with the company and argued that he did not deserve to be terminated for something he and other employees had done in the past without penalty. Further, Carreiro and Union advocates argued that (1) the employee purchase policy should have been reviewed with Carreiro as his career with Stop & Shop progressed; (2) sometimes the employee purchase policy that is posted at a store is torn down; (3) Carreiro was not aware that reducing the price on the hot dogs and purchasing out-of-code product was a violation of Stop & Shop policy and would jeopardize his job; (4) by purchasing the out-of-code product Carreiro was benefitting Stop & Shop by reducing waste; and (5) Carreiro thought that he was authorized to reduce the price on the hot dogs.

Flemming was informed of the progression of the grievance process by Union representatives. Flemming was aware that Stop & Shop routinely terminates employees who violate employee purchase policies as a result of the Union's "decades of experience with Stop & Shop[.]" Local 328 Statement of Undisputed Facts at ¶ 15. Based upon Flemming's

experience and the "consistent advice of [legal] counsel over the years," he was aware that arbitrators "virtually without exception uphold terminations . . . of employees found to have violated" employee purchase policies. Id. Flemming decided that Local 328 would not arbitrate Carreiro's grievance. As a result of Flemming's knowledge of the case, he concluded that Local 328 could not win an arbitration challenging Stop & Shop's termination of Carreiro. In communicating his decision not to arbitrate the grievance, however, Flemming instructed Matias to inform Carreiro of his right to appeal the decision not to arbitrate to the Union's executive board. Carreiro exercised that right and presented his case to the Union's executive board. Carreiro was given the opportunity to present his position to the executive board. The executive board reviewed the facts surrounding Carreiro's termination and the arguments he presented. Executive board members noted that the facts of the matter reflected that Carreiro knew what he was doing when he purchased the out-of-code product. In light of the particular violation of Stop & Shop policy, the executive board voted unanimously that the grievance not be submitted to arbitration. That vote was consistent with the executive board's vote on similar appeals involving employee purchase policy violations in the past.

Carreiro argues that the Union acted arbitrarily by not performing a reasonable investigation into his grievance. Carreiro argues that the Union representatives should have interviewed meat department managers and employees concerning purchases of out-of-code products. Carreiro also suggests that a reasonable investigation should have covered "[n]umerous other areas regarding deviations from" the employee purchase policy, yet he discloses no such evidence here. Plaintiff's Memorandum in Support of Objection to Motions for Summary Judgment at 7.

The duty of fair representation dictates that a union must conduct at least a "minimal investigation into an employee's grievance." Emmanuel, 426 F.3d 420 (internal quotation marks and citation omitted). However, according to that dictate, "only an egregious disregard for union members' rights constitutes a breach of the union's duty to investigate." Id. (emphasis added and internal quotation marks and citation omitted). To defeat summary judgment, Carreiro must "set forth concrete, specific facts from which one can infer" that the Union's acts were arbitrary. Khoudary v. Supermarkets General Corp., No. 95 CV 3302, 1996 WL 204496 at * 4 (E.D.N.Y. April 15, 1996). Moreover, Carreiro must demonstrate that the purported witnesses would have provided beneficial information to his cause. Emmanuel, 426 F.3d at 420.

As noted above, Carreiro's assertions made in his affidavit concerning the alleged violations of the employee purchase policy by other Stop & Shop personnel fails to garner any weight at the summary judgment stage. See Perez, 247 F.3d at 317 ("gauzy generalities are not eligible for inclusion in the summary judgment calculus"). Carreiro has failed to show that any of the unnamed Stop & Shop employees would have provided beneficial information. Emmanuel, 426 F.3d at 420.

In summary, Local 328 did not dispose of Carreiro's grievance in an arbitrary manner. Representatives of the union argued for Carreiro at each step of the grievance process. Flemming and the executive board considered the facts of the case and the likelihood of success in arbitration and determined that the union would not be successful in arbitrating the matter. See generally Sarnelli, 333 F. Supp. at 231 (union acted reasonably in believing that matter could not be successfully arbitrated); see generally Hussey, 2 F. Supp. 2d at 225 (no more expected of

union when a union member admits to stealing from an employer and the employer terminates the employee in accord with employment policies). Viewing the facts in the light most favorable to Carreiro, he has not presented specific facts showing a genuine issue for trial on his allegation that the Union's actions were so far outside the range of reasonableness as to be irrational. See generally id.

For the above reasons Stop & Shop's and Local 328's motions for summary judgment are GRANTED.

SO ORDERED

Mary M. Lisi
United States District Judge
July 31, 2008